UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Shreve**, et al., | : |
| | :   **Case No. 2:10-cv-644** |
| Plaintiffs, | : |
| | :   **Judge: Sargus** |
| -vs- | : |
| | :   **Magistrate Judge: Abel** |
| **Franklin County Ohio**, et al., | : |
| | : |
| Defendants. | : |

## PLAINTIFF AND PROPOSED CLASS' MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Fed. R. Civ. P. 65(a), Plaintiff Robert Shreve, by and through counsel, respectfully requests that this Court grant a preliminary injunction against the Defendants that requires them during the pendency of this lawsuit to:

1. Cease using tasers except in compliance with Sheriff's Office Policy AR800:2.[1]

2. Cease using tasers in drive stun mode unless there is an immediate need to prevent loss of life or serious bodily harm.

3. Permit counsel for the Plaintiffs to monitor compliance with this injunction by providing counsel with biweekly reports of taser use, including all use of force reports and accompanying video involving tasers.

Plaintiff Shreve additionally requests limited discovery and a hearing on this motion.

---

[1] This and additional policies from the Franklin County Sheriff's Office are attached as Exhibit 1.

This motion is supported by the following memorandum.

Respectfully submitted,

s/ Jane P. Perry
Jane P. Perry (0029698)
jperry@OLRS.state.oh.us
Trial Attorney for Plaintiffs
Kristen N. Henry (0082382)
khenry@OLRS.state.oh.us
Kerstin Sjoberg-Witt (0076405)
ksjoberg-witt@OLRS.state.oh.us
Legal Director
OHIO LEGAL RIGHTS SERVICE
50 W. Broad Street, Suite 1400
Columbus, Ohio 43215
(614) 466-7264 - telephone
(614) 644-1888 - fax

## **MEMORANDUM IN SUPPORT**

In this case, Plaintiffs allege that Sheriff's deputies at the Franklin County Correction Centers are routinely and needlessly using tasers to inflict serious physical pain as a form of corporal punishment on the individuals in their custody; that deputies have violated and continue to violate their own policies on use of force and the use of tasers; and that deputies do so with total impunity because there is a complete lack of accountability throughout the Sheriff's Office.

Tasers hurt.  These "hard impact weapons" inflict serious physical pain upon the individuals against whom they are used.  The Sixth Circuit has remarked that "a stun gun inflicts a painful and frightening blow, which temporarily paralyzes the large muscles of the body, rendering the victim helpless." *Kijowski v. City of Niles*, 2010 U.S. App. LEXIS 7222 at \*16 (6th Cir. 2010). (citation omitted)  Each taser usage sends 50,000 volts of electricity into the subject.  In the prong mode, the taser causes electro-muscular disruption, which affects the body's central nervous system.  In the drive stun mode, the taser relies solely on inflicting serious physical pain to induce compliance.

Plaintiffs' expert Steve J. Martin, who has 38 years of experience as a corrections officer, legal counsel, investigator for the U.S. Department of Justice, and as a court-appointed expert, has concluded after reviewing extensive records from the Franklin County Sheriff's Office that he has "never witnessed such a pervasive and pronounced pattern and practice of the wanton, gratuitous, and unnecessary infliction of pain on confined persons, some of whom are physically or mentally impaired, some of whom are tasered while fully restrained and passive, and most of whom are subjected to extreme indignities prior to, during, and after force is applied." Exhibit 2 at 26 - 27 ( hereinafter Rep. __ ).

Plaintiff Shreve seeks a preliminary injunction to stop this ongoing practice because the Defendants have exhibited a pattern and practice of violating the constitutional rights of individuals in their custody by inflicting serious physical pain through the use of tasers despite the lack of any valid penological purpose.

## I. BACKGROUND AND FACTS

As Plaintiffs' complaint alleges, the Defendants use tasers against arrestees and inmates in violation of the individuals' constitutional rights. Plaintiff Shreve, who seeks this injunction on behalf of himself and the putative class, was tased while he was handcuffed and held down by at least four deputies. Plaintiff Shreve is deaf, and the corporal who tased him stated that she did so to "soften him up." The Defendants' records show that many other individuals are tased not for immobilization purposes, but as corporal punishment even when they do not pose an immediate threat to themselves or others.

In support of his motion, Plaintiff Shreve submits the report of expert Steve J. Martin. Mr. Martin has 38 years of experience in the field, including work as a corrections officer and later as General Counsel for the Texas Department of Corrections, as well as fifteen years as an investigator for the U.S. Department of Justice, Civil Rights Division. Rep. 1 - 3. He has served as a court-

3

appointed monitor and as an expert in numerous cases regarding conditions in correctional facilities, including facilities in Ohio, New York City, Los Angeles, Chicago, Baltimore, Detroit, Houston, Pittsburgh, New Orleans, Seattle, Oklahoma City, and Las Vegas.  Rep. 3 - 4.

As Mr. Martin explains in his report, the taser has two modes: the prong mode, which immobilizes the subject by causing electro-muscular disruption, and the drive stun mode, which does not immobilize the subject's central nervous system.  Rep. 8 - 9.  Taser use "by definition, always inflicts serious pain on the subject."  Rep. 11.  However, while the use of the taser in prong mode provides deputies with an opportunity to gain control of a volatile situation when the subject is immobilized by the electro-muscular disruption, use of the taser in drive stun mode relies solely upon inflicting pain upon the subject to induce compliance.  Rep. 9.

Mr. Martin reviewed over one hundred use of force reports from the Franklin County Sheriff's Office and dozens of accompanying videos, and concluded that Franklin County Correction Center (FCCC) deputies improperly use tasers in the following ways:

- To indiscriminately, wantonly, and gratuitously inflict pain and corporal punishment, as in Incident #09-258, in which a young man arrested for disorderly conduct was repeatedly tased and pistol-whipped when he had difficulty complying with the deputies' orders to disrobe due to his intoxication.

- To summarily and corporally punish detainees for behaviors that do not constitute en immediate threat or where security imperatives are not immediately implicated, including Incident #10-009, where a man arrested for criminal trespass because he refused to leave a nightclub was tased six times, including four drive stuns, when he wandered from a bench in the booking area but remained under the watch of a deputy, and then was unable to comply

4

- As a "first-strike" weapon without consideration, or use, less painful, harmful, and injurious control tactics, such as Incident #09-399, when a deputy tased a woman who had difficulty removing her tongue ring and had asked for a paper towel to aide her.
- To inflict pain and corporal punishment on detainees with conditions that render them more susceptible to needless risks of harm associated with the taser, as in Incident #09-390, in which the deputies tased a detainee with mental illness fourteen times as they ordered him to slide out of his cell because he was injuring himself.
- As a retaliatory tactic on detainees who verbally question or resist officer commands, often accompanied by officers' use of words of malice, taunts, profanity, and threats, including Incident #09-114, where deputies tased an individual with mental illness in drive stun mode when he was slow to respond to commands after being awakened to move into a different cell.
- During the course of disrobing detainees for strip/body cavity searches in the presence of opposite gender personnel, as in Incident #09-147, where a young woman was tased four times, including three drive stuns, while male and female deputies forcibly stripped her with no explanation.

Rep. 6 - 7.  Additionally, Mr. Martin concludes that "FCCC supervisors fail to properly review and investigate incidents that contain clear and objective evidence of improper deployment of the X26 Taser, thus allowing FCCC officers to engage in such wrongdoing with impunity." Each of the above incidents—and all but two of the over one hundred incidents reviewed by Mr.

5

Martin—was found to be "justified" after a review pursuant to the Sheriff's Office policy. Rep. 26.

These incidents and the other records that form the basis of Mr. Martin's opinions demonstrate that the Defendants are engaging in a pattern and practice of violating the constitutional rights of individuals in their custody, such that preliminary injunctive relief is necessary and appropriate.

## II. LAW AND ARGUMENT

To prevail on a motion for preliminary injunction, the movant "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tip in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. ___, 129 S.Ct. 365, 374 (2008), *citing Munaf* v. *Geren*, 553 U.S. 674, 128 S.Ct. 2207 (2008) (slip op., at 12); *Amoco Production Co.* v. *Gambell*, 480 U.S. 531, 542 (1987); *Weinberger* v. *Romero-Barcelo*, 456 U.S. 305, 311–312 (1982).

Plaintiff Shreve can demonstrate that the Defendants have an ongoing policy and practice of using tasers to violate the constitutional rights of individuals in their custody. These ongoing constitutional violations and the infliction of serious physical pain upon arrestees and detainees support a finding that the Plaintiff class will continue to suffer irreparable harm in the absence of an injunction. The requested relief is narrowly tailored to ensure that the Defendants will not be harmed by the injunction, so the balance of equities tips in favor of the Plaintiff class. Finally, the injunction will serve the public interest by remedying constitutional violations. Therefore, Plaintiff Shreve respectfully requests that this Court enter a preliminary injunction as stated in his motion.

> A. *Plaintiff Shreve is likely to succeed on the merits of his claim on behalf of the class.*

Plaintiff Shreve is likely to succeed on the merits of his claim because, as Mr. Martin concludes, there is a "very evident pattern and practice by FCCC officers of resorting prematurely and precipitously to deployment of the taser regardless of need." Rep. 19.

Plaintiff Shreve brings this claim on behalf of the proposed class under 42 U.S.C. § 1983, which provides a federal cause of action against any person who, under color of state law, violates an individual's constitutional rights. The particular constitutional rights at issue here are the Fourth Amendment's protection from excessive force, the Fourteenth Amendment's protection against punishment without due process, and the Eighth Amendment's protection against cruel and unusual punishment. Although the standards are different for each protected right, the Defendants' conduct violates each standard.

**1. Plaintiff Shreve is likely to succeed on his claim that the Defendants are violating the Fourth Amendment rights of arrestees.**

The Defendants frequently use tasers on individuals during the booking process, shortly after they are arrested. These individuals are protected by the Fourth Amendment, which prohibits the use of tasers when such force is objectively unreasonable. "The Fourth Amendment protects pre-trial detainees arrested without a warrant through the completion of their probable-cause hearings." *Aldini v. Bodine*, 2010 U.S. App. LEXIS 13207 at *2-*3 (6th Cir. 2010). In analyzing a claim of excessive force under the Fourth Amendment, "the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard for their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth

7

Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotes omitted).  In making this determination, the court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

The Sixth Circuit has recognized that there are constitutional limitations on the use of tasers under the Fourth Amendment.  The court has remarked that "a stun gun inflicts a painful and frightening blow, which temporarily paralyzes the large muscles of the body, rendering the victim helpless.  Absent some compelling justification — such as the potential escape of a dangerous criminal or the threat of immediate harm — the use of such a weapon on a non-resistant person is unreasonable." *Kijowski v. City of Niles*, 2010 U.S. App. LEXIS 7222 at *16 (6th Cir. 2010) (internal quotes and citations omitted).  The Sixth Circuit also cited with approval in *Landis v. Baker*, 297 Fed. Appx. 453, 465 (6th Cir. 2008), other courts' holdings that "different tactics should be employed against an unarmed, emotionally distraught individual who is resisting or creating disturbance than would be used against an armed and dangerous criminal who has recently committed an offense"  and "when police are confronted by an unarmed, emotionally distraught individual who has committed no serious crime, as opposed to an armed and dangerous criminal, the governmental interest in using force is diminished, not strengthened, even when the suspect is irrational and inviting the use of force." *Id.*, citing *Deorle v. Rutherford*, 272 F. 3d 1272, 1282-83 (9th Cir. 2001) and *Marshall v. City of Portland*, 2004 U.S. Dist. LEXIS 8764 at *33 (D. Or., May 7, 2004).

Other courts have also found that the use of tasers can violate an individual's Fourth Amendment rights in situations that are similar to those in this case.  In *Bryan v. McPherson*, 590

8

F.3d 767 (9th Cir. 2009), the court held that the use of a taser against a non-violent misdemeanant arrestee standing twenty feet away from the arresting officers was unreasonable under the Fourth Amendment. Similarly, in *Richards v. Janis*, 2007 U.S. Dist. LEXIS 77929 (E.D. Wash., Oct. 17, 2007), the court held that the use of a taser against an individual who was handcuffed, lying on the ground, and restrained by three police officers created an issue of fact as to whether the force was unreasonable under the Fourth Amendment.

In this case, the Defendants' actions meet or exceed the standard for liability set forth in the above cases. As Mr. Martin states, the Defendants use "a weapon intended to be deployed in a defensive fashion" "as an offensive weapon for the singular purpose of inflicting corporal punishment." Rep. 16. The Defendants often exhibit this practice during the booking process, tasing individuals who are arrested for minor crimes, do not pose an immediate risk of harm, and are well within the physical control of the deputies. For example, Plaintiff Fiore-Bruno was arrested for disorderly conduct and was tased in drive stun mode while she was forcibly stripped in the presence of at least seven male and female deputies. In Incident #08-116, the sergeant drive stunned an arrestee who did not comply with an order to sit on a bench while she was surrounded by at least five deputies, after which a deputy can be heard remarking to the arresting officer that being tased "hurts like hell."

These incidents are a few of the dozens of incidents in which the Defendants exhibited their pattern and practice of using a taser to inflict pain without any justification on an individual arrested for a minor offense. Rep. 18 - 20. The Defendants routinely use tasers on individuals who are not violent, nor attempting to escape, and who are surrounded by numerous deputies who are exerting or could easily exert hands-on control of the individual in lieu of utilizing the taser to inflict pain. Instead, the Defendants "routinely deploy the taser on detainees as a retaliatory measure for passive

9

non-compliance with their commands." Rep. 22. Based on the standard set by the Supreme Court and the Sixth Circuit, the Defendants are violating the Fourth Amendment rights of individuals in their custody.

2. **Plaintiff Shreve is likely to succeed on his claim that the Defendants are violating the Fourteenth Amendment rights of detainees.**

The Defendants also have a pattern and practice of inappropriately using tasers against pretrial detainees who have not been convicted of any crime and who are, therefore, not subject to punishment. In situations that are covered by neither the Fourth nor the Eighth Amendments, the Fourteenth Amendment protects pretrial detainees from force that amounts to punishment because the Due Process Clause prohibits punishment prior to an adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002). The protections of the Fourteenth Amendment for pretrial detainees "are at least as great as the Eighth Amendment protections available to a convicted prisoner." *County of Sacramento v. Lewis*, 523 U.S. 833, 849, citing *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983) and *Bell*, 441 U.S. at 535.

Use of force against a pretrial detainee violates the Fourteenth Amendment if it "shocks the conscience." *See County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998). "Conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level" *Id.* at 849. The Sixth Circuit interpreted the Supreme Court's conclusion in *Lewis* to mean that determining whether a particular act "shocks the conscience" depends on whether the actor had an opportunity to "deliberate various alternatives"—in which case the actor will be held liable if he was deliberately indifferent to an individual's constitutional rights—or whether exigent circumstances required a reflexive response, wherein the

actor will only be liable if he acts "maliciously and sadistically for the very purpose of causing harm." *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000), citing *Lewis*, 523 U.S. at 850-51. The Supreme Court further stated in *Lewis* that "in the custodial situation of a prison, forethought about an inmate's welfare is not only feasible but obligatory under a regime that incapacitates a prisoner to exercise ordinary responsibility for his own welfare." *Id.* at 851.

Cases presenting similar circumstances to those alleged here have been found to support a claim under the Fourteenth Amendment, even under the more deferential "malicious and sadistic" standard. In *Lewis v. Downey*, 581 F.3d 467, 477-78 (7th Cir. 2009), the court vacated the district court's grant of summary judgment, based on the detainee's allegations that he was tased before he had an opportunity to comply with the officer's order. In *Orem v. Rephann*, 523 F.3d 442, (4th Cir. 2008), the court upheld the denial of summary judgment for a deputy who tased a detainee who was handcuffed and restrained with a hobbling device in the back of a police cruiser. In *Council v. Sutton*, 2010 U.S. App. LEXIS 2886 at *14-*15 (11th Cir. 2010), the court denied qualified immunity to officers accused of tasing a subdued detainee multiple times even though the detainee tried to crawl under his bed during the tasing. In *Smith v. Nesby*, 2007 U.S. Dist. LEXIS 83520 at *108, *116, *128-29 (N.D. Fla., Sept. 28, 2007), the court held that there was a question of fact as to whether the use of tasers against a non-resistant, mentally impaired detainee shocked the conscience.

The Defendants' use of tasers shocks the conscience under both the "deliberate indifference" and "malicious and sadistic" standards. The Defendants' routine use of tasers does not occur during disturbances at the correction centers, but rather in response to typical behavior exhibited by detainees, such as verbal refusal to comply with a deputy's order by an incapacitated detainee or a need for assistance in one's cell. Mr. Martin states that the use of force records are "replete with examples of deployment of the taser on passive, non-threatening detainees in the FCCC." Rep. 16.

11

The Defendants have an opportunity to deliberate as to how these typical and routine situations should be handled, and their conduct should be analyzed under the "deliberate indifference" standard.

The Defendants show deliberate indifference to the detainees' rights under the Fourteenth Amendment, as they "routinely deploy and use tasers as a 'first-strike' weapon without consideration, or use of, less painful, harmful, and injurious control tactics." Rep. 6. In fact, in many instances, the deputies could simply exert hands-on control of the detainee to prevent the need for any use of force, let alone a use of force that is purely intended to inflict pain to induce compliance. For example, in Incident #09-114, the detainee was drive stunned when he was slow to comply with orders after being awakened in his cell, despite the fact that four deputies were standing by and could have intervened in lieu of the use of force. Rep. 23. The repeated use of tasers as first-strike weapons when deputies have time to deliberate and have ready alternatives such as hands-on control shocks the conscience and demonstrates deliberate indifference to detainees' Fourteenth Amendment rights.

Furthermore, the Defendants' practice of using tasers against individuals who are mechanically restrained shows deliberate indifference to the detainees' Fourteenth Amendment rights. In Incident 09-360, the deputy drive stunned a detainee with mental illness who was immobilized in a four-point restraint chair and surrounded by numerous deputies. A Franklin County Sheriff's deputy also tased Plaintiff Reed while he was leg-ironed to a bed in the emergency room of Mt. Carmel hospital. As Mr. Martin states in his report, such use "on a subject that is cognitively impaired and rendered partially defenseless due to restraints . . . constitutes an egregious violation of every standard, guideline, regulation, and relevant law" with which he is familiar. Rep. 16.

12

Even in instances that could arguably be covered by the more deferential "malicious and sadistic standard" because they might involve exigent circumstances, the Defendants are violating individuals' Fourteenth Amendment rights by acting maliciously and sadistically for the very purpose of causing harm. In Incident #09-390, at least ten deputies assembled to remove a detainee who was injuring himself from his cell. Rep. 21 - 22. The deputies largely stood around outside the cell while the sergeant tased the detainee fourteen times while ordering him to slide out of the cell. Instead of executing a tactical plan to effectively accomplish the deputies' objective, they employed the pain of the taser as corporal punishment on the detainee. When the Defendants' first tased Plaintiff Reed in his cell, they demonstrated malice and sadism, as they repeatedly told him that when they tased him "It's gonna hurt a lot" and "It's gonna fucking hurt bad." Yet with the knowledge of the pain inflicted by the taser, they tased him several times, including a drive stun, when their stated purpose was to help him out of his cell to get medical attention after a seizure.

As Mr. Martin concludes in his report, the Defendants have "totally abandoned" their own regulations, as well as professional and legal standards, that are designed to control and limit the use of tasers, "resulting in high levels of unnecessary pain and harm to the subject detainees." Rep. 11. Because the Defendants are exhibiting a pattern and practice of acting with deliberate indifference to the constitutional rights of detainees and in many instances acting maliciously and sadistically for the very purpose of causing harm, they are violating these individuals' Fourteenth Amendment rights.

3. **Plaintiff Shreve is likely to succeed on his claim that the Defendants are violating the Eighth Amendment rights of inmates.**

The Defendants use similar practices against individuals who are sentenced to a term of confinement at the Franklin County Correction Centers. The Eight Amendment protects convicted

13

prisoners from cruel and unusual punishment. *Whitley v. Albers*, 475 U.S. 312, 318-19 (1986). "Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The factors to consider in determining whether the use of force violates the Eighth Amendment include the "need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 8 (internal quotes omitted), citing *Whitley*, 475 U.S. at 321. The Sixth Circuit has also described the standard as whether "the offending conduct reflects an unnecessary and wanton infliction of pain." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002), citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995).

Courts have allowed allegations of Eighth Amendment violations to proceed to trial based on incidents similar to those cited by Plaintiff Shreve on behalf of the class. In *Parker v. Asher*, 701 F. Supp. 192, 194-95 (D. Nev. 1998), the court held that an inmate's claim that a corrections officer merely threatened the use of a taser while pointing the loaded taser at the inmate was sufficient to state a claim under the Eighth Amendment. In *Shelton v. Angelone*, 183 F. Supp. 830, 835-36 (W.D. Va. 2002), the court denied summary judgment to the prison official based on the inmate's claim that he was repeatedly tased while restrained in leg irons and handcuffs.

The Eighth Amendment standard is the most difficult to meet, and yet the incidents cited throughout the complaint, this motion, and Mr. Martin's report show that the Defendants continually violate even this deferential standard. The routine use of tasers, particularly in drive stun mode, represents an unnecessary and wanton infliction of pain because the Defendants rely on tasers as

pain compliance tools instead of as defensive mechanisms. Rep. 16. The Defendants' malice and sadism is reflected in their repeated statements to individuals that being tased will be extremely painful; often these statements are laced with profanity or used as taunts. Rep. 23. In these incidents, the Defendants' use of tasers far exceeds the amount of force needed to accomplish their objective. Numerous deputies are routinely present and able to exert hands-on control of an inmate, and there is no indication that the deputies would face any particular risk of harm to themselves in doing so. By relying on the taser instead of considering alternative uses of force, the Defendants fail to temper the severity of their forceful response. Therefore, they are violating these inmates' Eighth Amendment rights.

**4. Plaintiff Shreve is likely to succeed on the merits based on the Defendants' pattern and practice of constitutional violations, which continues unabated because the Sheriff and other supervisors ratify the deputies' abusive use of tasers.**

The Sheriff and other supervisors are liable for the constitutional violations by the deputies because there is a pattern and practice of failing to train deputies on the appropriate use of tasers, ratifying the unconstitutional use of tasers by finding the uses to be "justified," and not imposing discipline on deputies who misuse tasers. These supervisors are accountable under Section 1983 for actions taken pursuant to their policy, practice, or custom. *Monell v. Dept. of Social Svcs.*, 436 U.S. 658, 690-91 (1978). Supervisory liability can be based on a failure to provide officers with adequate training. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Liability can also be based on a supervisor's ratification of unconstitutional conduct by failing to investigate or approving of the conduct. *Marchese v. Lucas*, 758 F.2d 181 (6th Cir. 1985); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989). All three bases for supervisory liability are present in this case.

According to their own policies, supervisors at the FCCCs, the Internal Affairs Bureau, and the Sheriff or his designee must review each use of force report and determine whether the use of force was justified. As Mr. Martin concludes in his report, "FCCC supervisors fail to properly review and investigate incidents that contain clear and objective evidence of improper deployment of the X26 taser, thus allowing FCCC officers to engage in such wrongdoing with impunity." Rep. 7. He states that "Of the many incidents reviewed in which evidence was present of violations of FCCC and state regulations, I identified no more than two incidents in which any adverse finding was entered. This near-total failure to exercise proper oversight of officers' use and deployment of the taser allows these practices to continue in wholly unabated fashion, causing needless harm, pain, and injury to detainees held in the custody of the FCCC." Rep. 26. In case after case, the deputies' routine use of tasers in violation of the Sheriff's Office policy also indicates that the Defendants have failed to train the deputies on the appropriate use of tasers. This lack of accountability throughout the chain of command shows that the Sheriff and other supervisors are responsible for the pattern and practice of abusive taser use among the deputies at the FCCCs.

For these reasons, Plaintiff Shreve, on behalf of the proposed class, meets the first prong for the granting of a preliminary injunction because he is likely to succeed on the merits of his claim that the Defendants have a pattern and practice of violating the constitutional rights of individuals in their custody.

  B. *Arrestees and detainees will continue to suffer irreparable harm in the absence of an injunction.*

Due to the Defendants' ongoing pattern and practice of using tasers to violate the constitutional rights of individuals in their custody, arrestees and detainees will continue to suffer the violation of their constitutional rights and the infliction of unwarranted serious physical pain in the

16

absence of an injunction. "The existence of a continuing constitutional violation constitutes proof of an irreparable harm, and its remedy certainly would serve the public interest." *Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978) (prison conditions including showers and recreation), citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (First Amendment). In fact, one district court has stated that "when reviewing a motion for a preliminary injunction, if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated." *Mich. Rehab. Clinic Inc., P.C. v. City of Detroit*, 310 F. Supp. 2d 867, 871 (E.D. Mich. 2004) (citing *Elrod*). As detailed above, the Defendants are continuing to violate the Fourth, Fourteenth, and Eighth Amendment rights of individuals in their custody through their use of tasers, which establishes that these individuals will continue to suffer irreparable harm.

In addition to the ongoing constitutional violations, Plaintiff Shreve and the proposed class will continue to suffer irreparable harm in the form of serious physical pain. Mr. Martin emphasizes that "the taser can inflict intense pain and carries a high risk of injury if used unnecessarily or excessively." Rep. 11. Exacerbating the risk of physical harm is the fact that "FCCC officers routinely deploy the X26 taser in disregard of safety precautions associated with its deployment." Rep. 20. "Unnecessary pain and aggravation of injury" are a form of irreparable harm that can support a preliminary injunction. *Hadix v. Caruso*, 461 F. Supp. 2d 574 (E.D. Mich. 2006), remanded on other grounds in *Hadix v. Caruso*, 248 Fed. Appx. 678 (6th Cir. 2007). Therefore, because these individuals will continue to suffer irreparable harm in the form of the violation of their constitutional rights and the infliction of serious physical pain, they have met the requirements of the second prong for the granting of a preliminary injunction.

> *C. The balance of equities tip in favor of the Plaintiffs because the Defendants will not suffer substantial harm if this Court issues a preliminary injunction.*

The Sixth Circuit has described this third prong as "whether issuance of a preliminary injunction would cause substantial harm to others." *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000), *citing McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (*en banc*). In this motion, Plaintiff Shreve is primarily requesting that the Defendants be ordered to follow their own policies for the use of tasers, which they are routinely disregarding. As Mr. Martin states, "it is these regulations and standards that FCCC officers and their supervisors have routinely and egregiously abandoned." Rep. 11. The Defendants will not be harmed by a requirement that they follow their own policies because tasers are not the only means available to the Defendants for controlling individuals in their custody, and they will continue to be able to use tasers — when they are a necessary and appropriate use of force.

In addition, Plaintiff Shreve requests that the Defendants be prohibited from using the tasers in drive stun mode unless there is an immediate need to prevent loss of life or serious bodily harm. The Defendants' abusive use of tasers in drive stun mode is particularly egregious due to its limited utility and sole reliance on the infliction of serious physical pain to induce compliance. In fact, the American Bar Association Standards for Criminal Justice Treatment of Prisoners, Third Edition, states that correctional policies governing the use of electronic weaponry such as tasers should "forbid the use of electronic weaponry in drive-stun or direct contact mode." Standard 23-5.8(a)(v). When this reasonable limitation on the Defendants' use of force tactics is balanced against preventing the violation of the Plaintiffs' constitutional rights and the infliction of serious physical pain, the equities tip in favor of the Plaintiffs.

*D. The public interest will be served by this Court granting the preliminary injunction.*

As the Seventh Circuit stated in *Preston*, the remedy of constitutional violations always serves the public interest. *Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978). The relief requested by the Plaintiffs here serves the public interest by preventing the continued violation of individuals' constitutional rights, while also retaining the Defendants' ability to maintain safety and security at the Franklin County Correction Centers. Therefore, the public interest will be served by the preliminary injunction.

## III. CONCLUSION

Plaintiff Shreve has demonstrated on behalf of the proposed class that the Defendants have a pattern and practice of violating the constitutional rights of individuals in their custody by inflicting unwarranted physical pain through the use of tasers. In order to prevent the continuing violations of these individuals' rights and to protect their bodily integrity, it is necessary that this Court grant a preliminary injunction that requires the Defendants to follow their own policy for taser use, prohibits the use of tasers in drive stun mode unless there is an immediate need to prevent loss of life or serious bodily harm, and permits Plaintiff's counsel to monitor the Defendants' compliance with the injunction by requiring the Defendants to provide biweekly reports of taser use.

Therefore, Plaintiff Shreve respectfully requests that his motion be granted.

Respectfully Submitted,
s/ Jane P. Perry
Jane P. Perry (0029698)
jperry@OLRS.state.oh.us
Trial Attorney for Plaintiffs
Kristen N. Henry (0082382)
khenry@OLRS.state.oh.us
Kerstin Sjoberg-Witt (0076405)
ksjoberg-witt@OLRS.state.oh.us
Legal Director
OHIO LEGAL RIGHTS SERVICE
50 W. Broad Street, Suite 1400
Columbus, Ohio 43215
(614) 466-7264 - telephone
(614) 644-1888 - fax

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Plaintiff's Motion for Preliminary Injunction was filed this 23rd day of July, 2010, with the Clerk of Court using the CM/ECF system, which will send notice of such filing to all registered parties.  In addition, I hereby certify that on this 23rd day of July, 2010, I mailed a copy of the foregoing Plaintiff's Motion for Preliminary Injunction via first-class U.S. mail, postage prepaid, to Ron O'Brien, 373 South High Street, 14th Floor, Columbus, Ohio 43215.

    Respectfully Submitted,

    s/ Jane P. Perry
    Jane P. Perry (0029698)
    jperry@OLRS.state.oh.us
    Trial Attorney for Plaintiffs
    Kristen N. Henry (0082382)
    khenry@OLRS.state.oh.us
    Kerstin Sjoberg-Witt (0076405)
    ksjoberg-witt@OLRS.state.oh.us
    Legal Director
    OHIO LEGAL RIGHTS SERVICE
    50 W. Broad Street, Suite 1400
    Columbus, Ohio 43215
    (614) 466-7264 - telephone
    (614) 644-1888 - fax