# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **ROBERT SHREVE,** Individually and on behalf of all others similarly situated, | : | **Case No.  2:10-cv-644** |
| | : | |
| **MICHAEL WORLEY,** Individually and on behalf of all others similarly situated, | : | |
| | : | |
| **MICHAEL REED,** Individually | : | |
| | | **Judge:  Sargus** |
| **DAWN FIORE-BRUNO**, Individually | : | |
| | | **Magistrate Judge:  Abel** |
| Plaintiffs, | : | |
| | : | |
| -vs- | : | **First Amended Individual Complaint for Damages** |
| | | |
| | : | **and** |
| | | |
| **FRANKLIN COUNTY, OHIO** | : | **First Amended Class Action Complaint for Declaratory and Injunctive Relief** |
| | : | |
| **JIM KARNES**, SHERIFF FRANKLIN COUNTY OHIO In his official capacity, | : | **Jury Demand Endorsed Hereon** |
| | : | |
| **MARK BARRETT**, FRANKLIN COUNTY SHERIFF'S OFFICE CHIEF DEPUTY, CORRECTIONS, Individually and in his official capacity, | : | |
| | : | |
| **STEPHAN L. MARTIN,** FRANKLIN COUNTY SHERIFF'S OFFICE CHIEF DEPUTY, INVESTIGATIONS, Individually and in his official capacity, | : | |
| | : | |
| **JOHN / JANE DOES**, FRANKLIN COUNTY DEPUTIES OF THE INTERNAL AFFAIRS BUREAU WHO REVIEWED AND INVESTIGATED USE OF FORCE REPORTS INVOLVING DEPLOYMENT OF TASERS AT FCCC I AND FCCC II FROM JULY 16, 2008 TO PRESENT Individually and in their official capacities, | : | |

**JOHN / JANE ROE(S),** FACILITY      :
COMMANDER(S) FRANKLIN COUNTY
CORRECTIONS CENTER I (FCCC I)      :
FROM JULY 16, 2008 TO PRESENT
Individually and in their official capacities,      :

**MAJOR MICHAEL HERRELL**,      :
FORMER FACILITY COMMANDER,
FRANKLIN COUNTY CORRECTIONS      :
CENTER II (FCCC II),
Individually and in his official capacity,      :

**MAJOR DOUG EDGINGTON**, PRESENT      :
FACILITY COMMANDER, FRANKLIN
COUNTY CORRECTIONS CENTER II,      :
Individually and in his official capacity,

     :

**FRANKLIN COUNTY SHERIFF'S**
**DEPUTIES:**      :

**JAMES DISHONG,**      :
**CPL. SAMUEL BYRD,**
**CHRIS LEONARD,**      :
**JAMES JODREY,**
**SAM MONTROSE,**      :
**CLAYTON KERN,**
**CHRISTOPHER STARNER,**      :

**SHANNON BEAUDRY,**      :
**SGT. STEVEN DEAN,**
**ELIZABETH KLEIN,**      :
**DEREK SHIVELY,**
**JASON BROBST,**      :
**LEE VANDETTE,**

     :

**DANIEL WALDREN,**      :
**JOSHUA CROSBY,**      :
**NICHOLAS LAPETINA,**
**CHRISTOPHER LEONARD**      :
**CURTIS WINN**
**BEN DAMSCHRODER**      :
**CPL. DEBRA CANTRELL,**
**JONATHAN ROUSH,**      :
**NICHOLAS WILLIAMS,**
**NATHAN COLEMAN,**      :

**ANDREW GILES,**                        :
**MARK EAGAN,**
**MANLEY MORGAN,**                   :
**DOUGLAS ROBINSON,**
**CHRISTOPHER LEE,**                  :
Individually and in their official
capacities,                                     :

Defendants.                                  :

## I.    INTRODUCTION

1.      Each paragraph in this First Amended Complaint incorporates all others.

2.      This case challenges a pervasive practice of subjecting arrestees and inmates at the Franklin County Corrections Centers to the excessive and disproportionate use of force by corrections deputies of the Franklin County Sheriff's Office.

3.      The challenged practice is carried out through the frequent and gratuitous use of tasers to inflict pain, fear, corporal punishment and humiliation.

4.      Tasers deliver a minimum 5-second 50,000 volt electrical shock that causes excruciating pain.  *Landis v. Baker*, 2008 U.S. App. LEXIS 21946, at *6 n.4 (6th Cir. 2008). Deputies are able to deliver more than 5 seconds of electricity simply by continuing to press the taser's trigger.  As long as the trigger is depressed, the electrical shock continues.

5.      Tasers operate in two different modes.  The primary use is to subdue a person at a safe distance by firing two darts or probes that strike and attach to the person.  Thereafter, an electrical discharge produces temporary neuromuscular incapacitation (NMI) which instantaneously and completely immobilizes the person.  "A stun gun inflicts a painful and frightening blow, which temporarily paralyzes the large muscles of the body, rendering the victim helpless."  *Kijowski v. City of Niles*, 2010 U.S. App. LEXIS 7222, at *16 (6th Cir. 2010).

6.      Tasers can also be used in "drive stun" mode.  According to the Taser International

Website Manual, drive stun mode is the "pain compliance option."  As the Taser Manual describes it: "Drive-stun Taser use produces a continuous extremely painful electrical shock useful for an officer engaged in close hand to hand contact with a resisting subject; pain forces the resisting subject to stop violently resisting and submit to handcuffing…."

7.     Franklin County Sheriff's deputies are aware of how painful it is to be tased.  Near the end of a video tape of the tasing of a female arrestee during booking at Franklin County Corrections Center I, a Franklin County deputy asks a police officer from The Ohio State University (OSU) campus if he has ever been tased.  When the officer responded no, the sheriff's deputy replied, "They hurt like hell."  Internal Affairs Report #08-116.

8.     It is the custom, policy and standard operating practice of Franklin County Sheriff's corrections deputies to repeatedly use their tasers in a callous and sadistic manner that violates the Franklin County Sheriff's own written policy for deployment of tasers; departs from well-established standards of law enforcement and corrections professionals; poses substantial and unjustifiable risks to the health, safety and physical integrity of arrestees and inmates; has caused needless physical harm and mental distress; and violates the Constitutional rights of arrestees and inmates at the Franklin County Corrections Centers.

## II.     JURISDICTION AND VENUE

9.     This court has subject matter jurisdiction over Plaintiffs' First Amended Complaint pursuant to 28 U.S.C. §§ 1331, 1343(3) and 1343(4).  Venue is proper in this district under 28 U.S.C. § 1391 because all parties reside in this district and the events or omissions giving rise to Plaintiffs' Complaint occurred in this district.

## III.    PARTIES

10.    Plaintiff Robert Shreve was at all times relevant to this action a resident of Franklin County, Ohio.

4

11.    Plaintiff Shreve was incarcerated at the Franklin County Corrections Center II (FCCC II) at the time of filing the original Complaint on July 16, 2010. He is no longer incarcerated but remains on probation with the Franklin County Municipal Court Department of Probation Services.

12.    Plaintiff Michael Worley was at all times relevant to this action a resident of Franklin County, Ohio.

13.    Plaintiff Worley was incarcerated at FCCC II at the time of filing the original complaint on July 16, 2010 and remains incarcerated at the time of filing this First Amended Complaint.

14.    Plaintiff Michael Reed was at all times relevant to this action a resident of Franklin County, Ohio.

15.    Plaintiff Reed is not incarcerated at the time of filing this First Amended Complaint.

16.    Plaintiff Dawn Fiore-Bruno was at all times relevant to this action a resident of Franklin County, Ohio.

17.    Plaintiff Fiore-Bruno is not incarcerated at the time of filing this First Amended Complaint.

18.    Defendant Franklin County is a unit of local government organized under the laws of the State of Ohio.

19.    Defendant Jim Karnes was at all times relevant to this action the Sheriff of Franklin County, Ohio.  He is sued in his official capacity.

20.    Defendant Mark Barrett was at all times relevant to this action the Chief Deputy, Corrections for the Franklin County Sheriff's Office.

21.    Defendant Barrett is the deputy in charge of the operations of Franklin County's two

correctional facilities, Franklin County Corrections Center I at 370 S. Front Street in Columbus, Ohio and Franklin County Corrections Center II at 2460 Jackson Pike in Columbus, Ohio.

22.    Defendant Barrett reviews and approves all use of force reports from all Franklin County corrections deputies, including use of force reports involving deployment of tasers.  He is sued in his individual and official capacities.

23.    Defendant Stephan L. Martin was at all times relevant to this action the Chief Deputy, Investigations for the Franklin County Sheriff's Office.

24.    As Chief of Investigations, Defendant Martin is the head of the Internal Affairs Bureau of the Franklin County Sheriff's Office.  The Internal Affairs Bureau is responsible for the investigation of alleged misconduct by members of the Franklin County Sheriff's Office.

25.    Defendant Martin's Bureau reviews all use of force reports from Franklin County corrections deputies, including use of force reports involving deployment of tasers.  Defendant Martin is sued in his individual and official capacities.

26.    Defendants John / Jane Does were the members of the Franklin County Sheriff's Office Internal Affairs Bureau at all times relevant to this action.

27.    As members of the Internal Affairs Bureau, Defendants John/ Jane Doe reviewed all use of force reports from Franklin County corrections deputies who worked at FCCC I and FCCC II, including use of force reports involving deployment of tasers.  Defendants John / Jane Doe are sued in their individual and official capacities.

28.    The names of these John / Jane Doe Defendants can be readily ascertained in discovery and Plaintiffs can file an amended complaint immediately upon identification of these Defendants.

29.    Defendants John / Jane Roes were the facility commanders for FCCC I at all times

relevant to this action.

30.    As FCCC I facility commanders, Defendants John/ Jane Roe reviewed all use of force reports from Franklin County corrections deputies who worked at FCCC I, including use of force reports involving deployment of tasers.  Defendants John / Jane Roe are sued in their individual and official capacities.

31.    The names of these John / Jane Roe Defendants can be readily ascertained in discovery and Plaintiffs can file an amended complaint immediately upon identification of these Defendants.

32.    Defendants Michael Herrell and Doug Edgington were the facility commanders for FCCC II during times relevant to this action.

33.    As FCCC II facility commanders, Defendants Herrell and Edgington reviewed all use of force reports from Franklin County corrections deputies who worked at FCCC II, including use of force reports involving deployment of tasers. Defendants Herrell and Edgington are sued in their individual and official capacities.

34.    Defendants Cantrell, Roush, Williams, Coleman, Giles, Eagan, Morgan, Robinson and Lee were active participants in the tasing of Plaintiff Robert Shreve.  These Defendants are sued in their individual capacities.

35.    Defendants Leonard, Waldron, Winn, Crosby, Damschroder and Lapetina were active participants in the tasing of Plaintiff Michael Worley.  These Defendants are sued in their individual capacities.

36.    Defendants Dishong, Carter, Byrd, Leonard, Jodrey, Montrose, Kern, and Starner were active participants in the tasing of Plaintiff Michael Reed.  These Defendants are sued in their individual capacities.

37.    Defendants Dean, Beaudry, Klein, Shively, Brobst and Vandette were active participants in the tasing of Plaintiff Dawn Fiore-Bruno.  These Defendants are sued in their individual capacities.

## IV.  POLICY AND PRACTICE OF EXCESSIVE USE OF TASERS BY DEFENDANTS

38.    Under Ohio law, Sheriff Karnes makes the policy for the county with regard to the operation of his office and discharge of his duties.

39.    According to the Franklin County Sheriff's Office policy, the Chief Deputy of Corrections, Defendant Barrett, assigns X26 Tasers to corrections officers at his discretion. AR800:2, Section 2.1.

40.    According to this same policy, tasers are to be deployed "to gain control of a violent or dangerous inmate…when attempts to subdue the inmate by conventional tactics have been or are likely to be ineffective or there is reasonable expectation that it will be unsafe for deputies to approach within contact range of the inmate."  AR800:2, Section 1.3.

41.    This policy permits taser deployment in the following circumstances:  self-defense; protection of another inmate or staff; disarming an inmate under non-lethal conditions; preventing self-harm to an inmate; or controlling a combative inmate.  AR800:2, Sections 1.3.1 - 1.3.5.

42.    According to policy, tasers should not be deployed upon persons who are restrained by a mechanical device such as handcuffs, leg irons or a restraint chair.  AR800:2, Section 3.1.14

43.    Further, the policy provides that the taser is not recommended for use on women known to be pregnant.  AR800:2, Section 5.5 states that corrections officers should not use tasers to "harass, taunt, interrogate, interview, threaten, or belittle any persons,"  AR800:2, Section 5.3.

44.    Under the policy, every time a deputy uses a taser he or she must generate a Use of Force Report which is forwarded through the chain of command.  AR800:2, Section 4.5.

8

45.    The Franklin County Sheriff's Office Use of Force policy states that each shift supervisor must compile a summary of each use of force report and forward this to Internal Affairs.  AR801, Section 2.3.

46.    Internal Affairs must then review all use of force reports, interview all persons with knowledge of the event, and make a determination of whether or not the use of force was in compliance with department policy, that is, whether the use of force was "justified."  AR801, Sections 2.5 - 2.6.  On information and belief, the Internal Affairs review also includes video tapes of each use of force incident, including tapes made by hand-held cameras operated by deputies.

47.    Internal Affairs then forwards this record and its use of force determination to the Franklin County Sheriff or his designee for review of the entire record.  The Sheriff or his designee may either accept or reject the finding of Internal Affairs.  AR801, Sections 2.7 - 2.8. If the use of force is ultimately determined to be "justified," no discipline is imposed on the deputy or deputies involved.

48.    Thus, the chain of command for reviewing all reports involving use of tasers by Franklin County Sheriff's deputies includes shift supervisors, the Internal Affairs Bureau and the Sheriff or his designee.  The Franklin County Sheriff or his designee makes the final determination of whether the use of tasers, or any other use of force, was justified.

49.    Franklin County corrections deputies routinely violate the Sheriff's Office policy on deployment of tasers.  These practices are captured in the written use of force reports and on videotapes recorded by the Franklin County Sheriff's Office in scores of cases since at least January 1, 2008.

50.    Franklin County corrections deputies regularly use tasers in situations where the

person does not remotely present a threat of violent behavior or harm to self or others, and routinely and deliberately use tasers as first strike weapons without employing or even considering less painful or harmful control tactics.

51.    In case after case, deputies tase people, often in the drive stun mode to cause pain, when the person was greatly outnumbered by a team of deputies who were easily able to physically overpower and control the individual, or accomplish the task at hand, thereby eliminating any objective threat to the person's own safety or that of the deputies.

52.    In a number of instances, corrections deputies tased arrestees or inmates while they were in mechanical restraints.  In one case, an inmate was even tased in drive stun mode while fully immobilized in a four point restraint chair.  The use of force in this instance was found "justified."  Internal Affairs Report #09-360.

53.    It is common for deputies to tase a person whose only offense was failure to obey deputies' verbal commands, which is classified as a "minor rule violation" that does not pose a threat to staff or inmates under the Sheriff's own administrative regulation.[1]  Thus, the threshold for use of the taser is often only a minor breach of jail discipline.

54.    Deputies also use the taser as a retaliatory weapon when detainees show verbal resistance or question authority by using profanity or making derogatory remarks to staff, despite that fact that this too is considered only a "minor rule violation" under Sheriff's Office policy.[2]

55.    Comparisons of the videotapes to the deputies' written use of force reports also show that deputies often embellish or misrepresent the circumstances under which people were tased. The written reports describe the persons they tased as "combative," "unruly" or "resisting" when

---

[1] Under AR 804 5.1.  "Minor rule violations shall include….failure to comply with an order by staff."
[2] Under AR 804 5.2 minor rule violations include "profanity, derogatory remarks or gestures to any member of the staff…."

the actual video showed that the person was yelling and/or cursing at deputies in a manner that was irritating, but not a physical threat.

56.     In other instances, the "resistance" was passive, not combative or active, in nature, such as a person refusing to place hands behind the back, failing or refusing to remove a piece of jewelry or clothing, or a person who crossed his or her arms across the chest in self-protection against a forced cuffing or stripping.

57.     For example, deputies tased a woman, who previously told them she was pregnant, for being unable to remove her tongue ring because her hands were too slippery.  Deputies tased her after they refused her repeated requests to use a paper towel to remove the tongue ring.  After tasing her the deputies finally gave her a paper towel which enabled her to remove the tongue ring without difficulty.  The tasing of this woman was found to be a "justified" use of force.  Internal Affairs Report #09-399.

58.     In many other instances, deputies tased persons for being "uncooperative."  These individuals were not violent or threatening violence.  They were simply so impaired by alcohol or drugs that they were incapable of comprehending or complying with the deputies' commands, as shown in a video that depicts a young male arrested on a misdemeanor charge who is clearly cognitively impaired by drugs or alcohol.  In the video of this case, the corporal in charge told the man "I don't know what you're on."

59.     Several deputies had taken this man to a cell in order to change him from his street clothes into jail clothes.  The corporal, who had a taser, informed the other deputies that "he hasn't been a threat to us but if I say 'taser' move out of the way."

60.     The video shows that the young man complied with the corporal's commands to remove his ring, shirt, shoes and pants but did so slowly, with deputies needing to assist at times.

The man had removed all clothing but his underwear when the corporal ordered him to sit down on a bench.  The man remained standing after several commands to sit down.  The corporal then tased him multiple times, including drive stuns, and pistol whipped him with the taser.  The deputy's use of the taser in this case was found "justified."  Internal Affairs Report #09-258.

61.    Corrections deputies routinely and deliberately use tasers in drive stun mode as a form of corporal punishment for behavior that does not remotely involve violent resistance by a subject, or constitute a physical or security threat.

62.    One example of this is captured in the video of a man arrested for a misdemeanor. He was handcuffed behind his back and was not acting out in a threatening manner.  Sgt. Mychal Turner tased this man twice with probes because he got up from a bench and began to walk around in the booking area while another deputy watched over him.  The man was kneeling on the floor, incapacitated by the earlier tasings, when the Sergeant then drive stunned him twice because the man did not immediately obey further commands to get up from the floor and sit down on the bench.  The tasing of this man was reviewed and found to be "justified."  Internal Affairs Report #10-009.

63.    Corrections deputies also routinely and deliberately tase people who are particularly vulnerable because of physical and mental disabilities. Deputies often respond inappropriately to such persons in a manner that escalates conflict and actually increases the likelihood that excessive force will be used.

64.    One video depicts deputies who came to the cell of an inmate with mental illness to move him to another location.  When deputies opened the cell door the inmate was holding a mat in front of him and speaking unintelligibly.  The inmate's actions and demeanor show that he was disoriented.  Sgt. Turner tased this inmate for not standing up and tased him again for

moving his arms and legs, stating "I'm tired of playing with you."  Turner continued to tase this mentally impaired inmate when he tried to crawl under the bed.  The inmate was finally pulled out of the cell, still clutching the mat. He was put in leg irons and tased again when he would not let go of the mat. The use of force in this instance was found "justified."  Internal Affairs Report #09-018.

65.    In another video, deputies came to a cell ostensibly to assist a mentally ill inmate who was banging his head against his bed.  Instead of entering the cell to remove the inmate, a team of deputies stood around outside the cell while a sergeant repeatedly tased this inmate a total of fourteen times because he would not slide out of the cell by himself.  This use of force was found to be "justified."  Internal Affairs Report #09-390.

66.    Corrections deputies also routinely and deliberately deploy tasers for pain and subjugation during the forced stripping of arrestees who should not be subjected to such a humiliating practice.

67.    Often, when an arrestee voices a verbal objection to having to remove his or her clothes, or otherwise shows any lack of cooperation during the booking process, such as failing to answer routine medical questions from a nurse, a team of deputies takes the person into a side tank, forcibly strips the individual without telling the person why they are being "dressed out," and tases the person if there is any degree of resistance, including passive or verbal resistance, to being stripped.

68.    For example, one video shows a twenty one year old woman, brought in for driving without an operator's license, a misdemeanor, who was stripped and tased four times.  During booking, she verbally expressed her displeasure at being arrested but was not aggressive or threatening.  The deputies grabbed her already injured arm and she complained they were hurting

her.  When she voiced these complaints, deputies whisked her into a "side tank" where deputies

pushed her face first into a wall and then forced her to the floor, face down.

69.    Although deputies described this young woman as "violently" resisting, at least four

deputies controlled her arms, trunk and legs and she could only squirm.  With two male deputies

present, and another male deputy filming with a hand-held camera, the team of deputies forcibly

stripped her while she constantly asked "what are you doing to me?"  She was left lying naked,

face down on the floor of her cell.  Deputies left only a safety gown for her to wear, despite the

fact that she presented no objective risk of self harm.[3]  This use of force was also found

"justified."  Internal Affairs Report #09-147.

70.    In another case, the Ohio State Patrol brought a Hispanic man to the jail on traffic

charges.  He was also suspected of possibly being a deportable felon wanted by the United States

Immigration and Naturalization Service (INS), which turned out to be a case of mistaken

identity.  The video shows that deputies booked this man and then took him into a side tank

where he was ordered to strip.

71.    Deputies ordered the man to pull his underwear down, turn around, bend over and

"spread your ass cheeks."  The man refused to comply with this humiliating request.  Sgt. Turner

again ordered the man to bend over and spread his cheeks so that he could be checked for

"contraband" even though these deputies had no reason to suspect that the man possessed drugs

and he had already had a pat-down search and clothing search.  He again refused and Turner then

tased him.  The intense pain led the man to obey Turner's command.  Afterwards, he asked

Turner "why you mess with me like that?"  In response to the man's question, Turner replied in a

---

[3] The safety or suicide gown is a shapeless green gown that is supposed to be used for
arrestees or inmates who are threatening self-harm.  When a person is placed in a safety gown he
or she is not even allowed to wear underwear.

loud voice, "This is jail."  Turner's use of the taser in this case was reviewed and found to be "justified."  Internal Affairs Report #08-272.

72.　　Sheriff Karnes, as the policy maker for the Franklin County Sheriff's Office, as well as Deputy Chiefs Barrett and Martin, members of the Internal Affairs Bureau and the facility commanders of the Franklin County Corrections Centers are responsible for the policy and practice of excessive and abusive use of tasers by Franklin County Sheriff's corrections officers. This is because, as set out in this Complaint:

　　　　a)　　They routinely ratify corrections deputies' misuse of tasers by reviewing the use of force reports and videotapes and finding the use of tasers to be "justified."

　　　　b)　　They fail to discipline deputies whose use of tasers violates the Franklin County Sheriff's own written policy for deployment of tasers; departs from well-established standards of law enforcement and corrections professionals; poses substantial and unjustifiable risks to the health, safety and physical integrity of the persons tased; causes needless physical harm and mental distress; and violates the Constitutional rights of persons in the custody of the Franklin County Corrections Centers.

　　　　c)　　As evidenced by the deputies' repeated misuse of tasers as set forth in this Complaint, they have failed to properly train corrections deputies to use tasers in accordance with the Franklin County Sheriff's Office written policy; to use tasers in accordance with manufacturer's warnings for safe use on subjects; to use tasers in accordance with accepted law enforcement principles for use of force; and to use tasers in accordance with the federal Constitutional rights of persons in custody to be free from excessive force.

73.　　The policies and practices of Defendants Sheriff Karnes, Chief Deputies Barrett and

Martin, John/Jane Does, John/Jane Roes, Herrell and Edgington in their official and individual

capacities constitute deliberate indifference that in turn makes Defendant Franklin County

accountable for injuries to the Plaintiffs in this action.

74.　Along with those cases discussed above, the facts in the cases of named Plaintiffs

Robert Shreve, Michael Worley, Michael Reed, and Dawn Fiore-Bruno exemplify the policy and

practice of abusive and excessive use of tasers by Franklin County Corrections deputies.

## V.　PLAINTIFF ROBERT SHREVE - STATEMENT OF FACTS

75.　Plaintiff Shreve is deaf.  He was brought to FCCC I on a misdemeanor charge,

domestic violence, at a few minutes after midnight on July 19, 2009.

76.　The video of his case shows that he arrived in the back of a Columbus Police

Department wagon.  He was handcuffed behind his back and his legs were restrained by a hobble

strap because, according to Columbus police, he was a "fighter."

77.　A team of at least six sheriff's deputies and Cpl. Debra Cantrell assembled at the

police wagon to take Mr. Shreve from police custody and into the jail booking area.

78.　Cpl. Cantrell had her taser out before Mr. Shreve was even lifted from the police

wagon.

79.　A Columbus police officer told Cpl. Cantrell and the other deputies that Mr. Shreve

was deaf and could not speak English.

80.　Mr. Shreve was removed from the police wagon without incident and was held by

deputies.  He went limp and was carried into the jail booking area by three deputies.

81.　Once inside the booking area, Mr. Shreve was placed face down on the floor and

held there by a team of deputies.

82.　Deputy Jonathan Roush had Mr. Shreve's left arm; Deputy Douglas Robinson had

his right arm; and Deputy Christopher Lee had his legs.  Cpl. Cantrell stood by with her taser

out.

83.     Mr. Shreve is not a big man.  He is 5 feet, 7 inches tall and weighs 165 pounds.

84.     The Deputies' reports state that Mr. Shreve was "attempting to kick and move about on the floor struggling with staff."  In her report, Cpl. Cantrell stated that Mr. Shreve "continued to struggle and thrash about" and was "combative."  She also stated that Mr. Shreve was trying to bite one of the deputies.

85.     These descriptions do not accurately reflect the actual video tape of Mr. Shreve's booking.

86.     The video shows that it would have been physically impossible for him to bite anyone because he was handcuffed behind his back and pinned, face down on the floor, by three deputies.  Deputies Roush and Robinson were on his right and left upper body and Deputy Lee held Mr. Shreve's legs down.

87.     Although he did move his legs to one side he was not kicking.  His legs were hobbled and restrained by the deputies.  It was not physically possible for him to "thrash about" or be "combative" with three deputies on top of him.

88.     A fourth deputy, Nicholas Williams, also stepped in and, with both hands, pressed Mr. Shreve's face into the floor in a head lock.  In total, he was handcuffed behind the back, in leg irons and held down by four deputies.  Their intended task was to exchange handcuffs and return the original set of cuffs to the Columbus police officers.

89.     While all four deputies immobilized Mr. Shreve face down, Cpl. Cantrell stepped in and tased Mr. Shreve's leg in drive stun mode.  He gave a guttural cry of pain.  Cpl. Cantrell then asked the deputies, "Did that soften him up?"

90.     After the deputies exchanged the handcuffs, Cpl. Cantrell then leaned over

Mr. Shreve and told him to "relax, relax," as if he could hear her instructions.  She later

remarked, "He's freakin' because he can't hear."

91.    Mr. Shreve was then taken to a side tank where his clothes were removed and he was

placed in jail clothing without further incident.

92.    Cpl. Cantrell's use of the taser in drive stun mode to "soften up" Mr. Shreve was

deemed to be a "justified" use of force.

## VI.   ROBERT SHREVE INDIVIDUAL CAUSE OF ACTION - 42 U.S.C. § 1983 AS TO DEFENDANTS CANTRELL, ROUSH, WILLIAMS, COLEMAN, GILES, EAGAN, MORGAN, ROBINSON AND LEE

93.    At all times relevant to this Complaint, Defendants Cantrell, Roush, Williams,

Coleman, Giles, Eagan, Morgan, Robinson and Lee were state actors by virtue of their

employment with the Franklin County Sheriff's Office.

94.    42 U.S.C. § 1983 provides that no person, acting under color of state law, shall

deprive a citizen of his rights arising under the Constitution or federal laws.

95.    As an arrestee, Plaintiff Shreve was protected by the Fourth Amendment's protection

against use of excessive force by law enforcement.

96.    Under the Fourth Amendment, law enforcement officers may only use reasonable

force, that is, the amount of force that is reasonable to protect officers from a perceived threat.

97.    The use of the taser in drive stun mode against Plaintiff Shreve by Defendants

Cantrell, Roush, Williams, Coleman, Giles, Eagan, Morgan, Robinson and Lee was a willful,

callous and gratuitous act that violated Plaintiff Shreve's Fourth Amendment right to be free

from the use of excessive force.

98.    The fact that Defendants Roush, Williams, Coleman, Giles, Eagan, Morgan,

Robinson and Lee were not the officers who tased Mr. Shreve does not diminish their

culpability.  These deputies were present, were active participants who subdued Mr. Shreve,

were aware that Deputy Cantrell was going to tase Mr. Shreve as he lay in their grasp, and had the opportunity to stop it from occurring.

99.    As a direct and proximate result of the excessive use of force by Defendants Cantrell, Roush, Williams, Coleman, Giles, Eagan, Morgan, Robinson and Lee, Plaintiff Shreve suffered compensable physical pain and injuries as well as emotional distress.

100.   Plaintiff Shreve is also entitled to punitive damages because Defendants Cantrell, Roush, Williams, Coleman, Giles, Eagan, Morgan, Robinson and Lee acted with reckless or callous indifference to Plaintiff's Fourth Amendment right to protection against the use of excessive force.

## VII.  ROBERT SHREVE INDIVIDUAL CAUSE OF ACTION - 42 U.S.C. § 1983 AS TO DEFENDANTS FRANKLIN COUNTY, SHERIFF JIM KARNES, CHIEF DEPUTY MARK BARRETT, CHIEF DEPUTY STEVE MARTIN, JANE/JOHN DOES, JANE/JOHN ROES, MAJOR MICHAEL HERRELL AND MAJOR DOUG EDGINGTON

101.   Defendants Sheriff Karnes, Chief Deputies Barrett and Martin, Deputies Jane/John Does, Deputies Jane/John Roes, and Majors Herrell and Edgington are all state actors by virtue of their employment with the Franklin County Sheriff's Office.

102.   Defendants Sheriff Karnes, Chief Deputies Barrett, Martin, Jane/John Does, Jane/John Roes, Herrell and Edgington have created a policy and practice of excessive and abusive use of tasers by Franklin County Sheriff's corrections officers because:

a)    They routinely ratify corrections deputies' misuse of tasers by reviewing the use of force reports and videotapes and finding the use of tasers to be "justified, as they did in Plaintiff Shreve's case.

b)    As in Plaintiff Shreve's case, they fail to discipline deputies whose use of tasers violates the Franklin County Sheriff's own written policy for deployment of tasers; departs from well-established standards of law enforcement and corrections professionals; poses

substantial and unjustifiable risks to the health, safety and physical integrity of the persons

tased; causes needless physical harm and mental distress; and violates the Constitutional

rights of persons in the custody of the Franklin County Corrections Centers.

c)     As evidenced by the deputies' repeated misuse of tasers as set forth in this

Complaint, Defendants Sheriff Karnes, Chief Deputies Barrett, Martin, Jane/John Does,

Jane/John Roes, Herrell and Edgington have failed to properly train corrections deputies to

use tasers in accordance with Sheriff's Office written policy; to use tasers in accordance

with manufacturer's warnings for safe use on subjects; to use tasers in accordance with

accepted law enforcement principles for use of force; and to use tasers in accordance with

the federal constitutional rights of persons in custody to be free of excessive force.

103.   The policies and practices of Defendants Sheriff Karnes, Chief Deputies Barrett,

Martin, Jane/John Does, Jane/John Roes, Herrell and Edgington in their official and individual

capacities constitutes deliberate indifference that in turn makes Defendant Franklin County

accountable for injuries to Plaintiff Shreve. *Leach v. Shelby County Sheriff,* 891 F. 2d 1241, 1245

1246, 1248 (6th Cir. 1989).

104.   Defendants Franklin County, Sheriff Karnes, Chief Deputies Barrett, Martin,

Jane/John Does, Jane/John Roes, Herrell and Edgington acted with deliberate indifference by

their failure to train deputies in the proper use of reasonable force and by ratifying the use of

excessive and gratuitous force against Plaintiff Shreve while acting under color of state law.

105.   These actions and failures to act by these Defendants caused Plaintiff Shreve to be

subjected to excessive and unreasonable force in violation of the Fourth Amendment, from

which he suffered compensable physical pain and injuries as well as emotional distress.

106.   Plaintiff Shreve is also entitled to punitive damages against these Defendants

because they acted with reckless or callous indifference to Plaintiff's Fourth Amendment right to protection against the use of excessive force.

## VIII. PLAINTIFF MICHAEL WORLEY - STATEMENT OF FACTS

107.  Plaintiff Worley had open heart surgery to replace his mitral valve in December, 2008.  He is also recovering from addiction to heroin.  He has not used heroin for at least seven months.

108.  Plaintiff Worley was arrested by Franklin County Sheriff's deputies on April 16, 2010 in Grove City.  He was a passenger in a car pulled over for a traffic stop.

109.  Deputies found that he had an outstanding misdemeanor warrant for petty theft. They also found marijuana and some Xanax and Suboxone pills that were not prescribed for Mr. Worley.

110.  Suboxone is approved for the treatment of opioid dependence and Xanax is an anti-anxiety drug.  Mr. Worley told deputies he was a recovering heroin addict and took both pills to keep him from relapsing.

111.  Deputies arrested him on the misdemeanor warrant and possession of drugs and took him to FCCC I for booking.  Once booked, Mr. Worley was placed in a side cell.

112.  According to Sgt. Christopher Leonard's use of force report, a deputy heard Mr. Worley yell that he wanted to kill himself.

113.  A "response team" was assembled to go to Mr. Worley's cell, place him on a safety watch, and place Mr. Worley in a safety gown.

114.  Five deputies - Sgt. Leonard, Joshua Crosby, Daniel Waldren, Ben Damschroder and Nicholas Lapetina - entered Mr. Worley's cell.  Deputy Curtis Winn recorded this incident on a hand-held camera.

115.  The video tape of this incident shows that Sgt. Leonard drew his taser as he entered

Mr. Worley's cell with the other four deputies.

116.  Sgt. Leonard ordered Mr. Worley to stand up and turn around so that Mr. Worley had his back to the deputies and was facing the back wall of his cell.

117.  Sgt. Leonard then ordered Mr. Worley to take off his shirt, sandals and socks.

118.  Mr. Worley complied with these orders but asked "why do I gotta get naked?"

119.  Sgt. Leonard replied, "cause you said you wanted to kill yourself."

120.  Mr. Worley denied this, saying "no, I said I feel like I'm going crazy if I don't get my anxiety medicine."

121.  Sgt. Leonard then ordered Mr. Worley to take off his pants and his underwear.  Sgt. Leonard then told Mr. Worley "one more order and I'm going to tase you."

122.  Taser International warns that subjects with certain pre-existing conditions such as cardiac disease may be at risk of death or serious injury from "arrest-related death" if tased.

123.  Mr. Worley turned toward the sergeant and deputies and told them "I got open heart surgery, you'll kill me, my mom will be rich."

124.  Sgt. Leonard's response was "I don't care."

125.  Mr. Worley took off his pants but refused to take off his underwear saying "I'm not sitting in here naked."

126.  Sgt. Leonard gave Mr. Worley three rapid commands to take off his shorts, then said "I'm not gonna tell you again, take off your shorts."

127.  The sergeant then immediately tased Mr. Worley in the back. Mr. Worley cried out in pain.

128.  Sgt. Leonard ordered Mr. Worley to lay on his belly and put his hands at his sides or "I'll pull the trigger again."  Sgt. Leonard ordered the other deputies to remove Mr. Worley's

underwear as he lay face down on the cell floor.

129. Mr. Worley made choking and coughing noises after being tased and his entire body began shaking uncontrollably.

130. Sgt. Leonard remarked, "He's faking," but called for a nurse. She asked Mr. Worley if he could hear her, told him to open his eyes, told him to calm his breathing and told him to wake up. Mr. Worley continued shaking for several minutes after the nurse arrived.

131. Once Mr. Worley stopped shaking Sgt. Leonard told him to "stay down on the ground or I'll shoot you again." The deputies then placed Mr. Worley in a suicide gown.

132. There were five deputies in Mr. Worley's cell who could have managed any resistance or threat presented by Mr. Worley. Mr. Worley himself did not physically or verbally threaten these deputies. He was tased simply because he did not want to remove his underwear.

133. Knowing that Mr. Worley had a heart condition, Sgt. Leonard deployed his taser without considering measures of lesser force because this was the quickest and most convenient way to get compliance.

134. Sgt. Leonard's use of the taser as a form of pain compliance in this instance was reviewed and found to be "justified."

## IX. MICHAEL WORLEY INDIVIDUAL CAUSE OF ACTION - 42 U.S.C. § 1983 AS TO DEFENDANTS LEONARD, WINN, CROSBY, DAMSCHRODER, WALDREN AND LAPETINA

135. At all times relevant to this Complaint, Defendants Leonard, Winn, Crosby, Damschroder, Waldren and Lapetina were state actors by virtue of their employment with the Franklin County Sheriff's Office.

136. 42 U.S.C. § 1983 provides that no person, acting under color of state law, shall deprive a citizen of his rights arising under the Constitution or federal laws.

137. As an arrestee, Plaintiff Worley was protected by the Fourth Amendment's

23

protection against use of excessive force by law enforcement.

138.   Under the Fourth Amendment, law enforcement officers may only use reasonable force, that is, the amount of force that is reasonable to protect officers from a perceived threat.

139.   The use of the taser against Plaintiff Worley by Defendants Leonard, Winn, Crosby, Damschroder, Waldren and Lapetina was a willful, callous and gratuitous act that violated Plaintiff Worley's Fourth Amendment right to be free from the use of excessive force.

140.   The fact that Defendants Winn, Crosby, Damschroder, Waldren and Lapetina were not the officers who tased Mr. Worley does not diminish their culpability.  These deputies were present, were active participants in this incident, were aware that Sgt. Leonard was threatening to tase Mr. Worley, and had the opportunity to stop it from occurring.

141.   As a direct and proximate result of the excessive use of force by Defendants Leonard, Winn, Crosby, Damschroder, Waldren and Lapetina, Plaintiff Worley suffered compensable physical pain and injuries as well as emotional distress.

142.   Plaintiff Worley is also entitled to punitive damages because Defendants Leonard, Winn, Crosby, Damschroder, Waldren and Lapetina acted with reckless or callous indifference to Plaintiff's Fourth Amendment right to protection against the use of excessive force.

## X.   MICHAEL WORLEY INDIVIDUAL CAUSE OF ACTION - 42 U.S.C. § 1983 AS TO DEFENDANTS FRANKLIN COUNTY, SHERIFF JIM KARNES, CHIEF DEPUTY MARK BARRETT, CHIEF DEPUTY STEVE MARTIN, JANE/JOHN DOES, JANE/JOHN ROES, MAJOR MICHAEL HERRELL AND MAJOR DOUG EDGINGTON

143.   Defendants Sheriff Karnes, Chief Deputies Barrett and Martin, Deputies Jane/John Does, Deputies Jane/John Roes, and Majors Herrell and Edgington are all state actors by virtue of their employment with the Franklin County Sheriff's Office.

144.   Defendants Sheriff Karnes, Chief Deputies Barrett, Martin, Jane/John Does, Jane/John Roes, Herrell and Edgington have created a policy and practice of excessive and

24

abusive use of tasers by Franklin County Sheriff's corrections officers because:

    a)   They routinely ratify corrections deputies' misuse of tasers by reviewing the use of force reports and videotapes and finding the use of tasers to be "justified," as they did in Plaintiff Worley's case.

    b)   As in Plaintiff Worley's case, they fail to discipline deputies whose use of tasers violates the Franklin County Sheriff's own written policy for deployment of tasers; departs from well-established standards of law enforcement and corrections professionals; poses substantial and unjustifiable risks to the health, safety and physical integrity of the persons tased; causes needless physical harm and mental distress; and violates the Constitutional rights of persons in the custody of the Franklin County Corrections Centers.

    c)   As evidenced by the deputies' repeated misuse of tasers as set forth in this Complaint, Defendants Sheriff Karnes, Chief Deputies Barrett, Martin, Jane/John Does, Jane/John Roes, Herrell and Edgington have failed to properly train corrections deputies to use tasers in accordance with Sheriff's Office written policy; to use tasers in accordance with manufacturer's warnings for safe use on subjects; to use tasers in accordance with accepted law enforcement principles for use of force; and to use tasers in accordance with the federal constitutional rights of persons in custody to be free of excessive force.

145.  The policies and practices of Defendants Sheriff Karnes, Chief Deputies Barrett and Martin, Deputies Jane/John Does, Deputies Jane/John Roes, and Majors Herrell and Edgington in their official and individual capacities constitutes deliberate indifference that in turn makes Defendant Franklin County accountable for injuries to Plaintiff Worley. *Leach v. Shelby County Sheriff,* 891 F. 2d 1241, 1245 - 1246, 1248 (6th Cir. 1989)

146.  Defendants Franklin County, Sheriff Karnes, Chief Deputies Barrett and Martin,

Deputies Jane/John Does, Deputies Jane/John Roes, and Majors Herrell and Edgington acted with deliberate indifference by their failure to train deputies in the proper use of reasonable force and by ratifying the use of excessive and gratuitous force against Plaintiff Worley while acting under color of state law.

147. These actions and failures to act by these Defendants caused Plaintiff Worley to be subjected to excessive and unreasonable force in violation of the Fourth Amendment, from which he suffered compensable physical pain and injuries as well as emotional distress.

148. Plaintiff Worley is also entitled to punitive damages against these Defendants because they acted with reckless or callous indifference to Plaintiff's Fourth Amendment right to protection against the use of excessive force.

## XI. PLAINTIFF MICHAEL REED - STATEMENT OF FACTS

149. In the early 1990's, Plaintiff Reed had a motorcycle accident that left him in a coma and caused a traumatic brain injury. Since this accident he has experienced seizure episodes.

150. Mr. Reed has been diagnosed with both tonic clonic seizures (stiffening and rigidity of muscles followed by rhythmic jerking motions) and complex partial seizures (the person appears to be staring blankly and loses contact with his surroundings, often followed by chewing movements, mumbling and unorganized movements).

151. Like many persons who have seizures, he usually does not remember having the seizure and becomes confused, disoriented, fatigued and sometimes combative after a seizure.

152. On August 10, 2008 Mr. Reed was walking near the corner of Hamilton Road and Broad Street in Columbus, Ohio when he had a seizure.

153. Emergency Medical Technicians (EMTs) from the Columbus Fire Department responded. According to their reports, Mr. Reed was lying on his stomach when they arrived, rambling and not making sense. When they tried to take him to the hospital, they said he became

26

"aggressive and assaultive."

154.   Instead of the hospital, Mr. Reed ended up in jail on a charge of assaulting a peace officer, one of the EMTs.

155.   Mr. Reed had no memory of the incident.  He woke up in jail, wearing a suicide gown.  When told he was in jail for assault, he asked who he assaulted.

156.   Mr. Reed was incarcerated in the Franklin County Corrections Center II awaiting trial on the assault charge.

157.   On December 23, 2008, Judge Michael Holbrook of the Franklin County Common Pleas Court found Mr. Reed not guilty by reason of insanity (NGRI) on the assault charge.

158.   The NGRI finding was based on an evaluation by forensic psychologist Pamela Chapman which concluded that, because of his brain injury and seizure disorder, he was neither able to appreciate the wrongfulness of his conduct at the time of the offense nor able to control his disorganized thinking and behavior.

159.   Judge Holbrook ordered Mr. Reed to be committed to the Twin Valley Behavioral Healthcare Forensic Unit.

160.   However, Twin Valley did not have an open bed.  Thus, Mr. Reed had to stay in the Franklin County Corrections Center II until a bed became available at Twin Valley.

161.   On January 29, 2009 Mr. Reed had a seizure in his cell at FCCC II.

162.   A team of deputies - Cpl. Sam Byrd, Deputy Sam Montrose, Deputy James Jodrey, Deputy Clayton Kern and Deputy Chris Starner -  entered his cell at about 4:00 pm to "take him to medical" to receive medical attention.

163.   These deputies were aware that Mr. Reed had just had a seizure.

164.   Mr. Reed was on the floor of his cell when the deputies entered.  Upon entering, they

gave rapid commands to Mr. Reed to put his hands behind his back so they could put handcuffs on him and take him to medical.

165.  The deputies' use of force reports indicate that Mr. Reed became "combative" when they tried to handcuff him.  The video of this incident, however, does not support their description of Mr. Reed.

166.  The video shows Mr. Reed as being dazed, confused and unable to process the deputies' commands in the aftermath of his seizure.

167.  Mr. Reed did not put his hands behind his back as commanded, but he did not actively resist the deputies.  He put his hands up in a defensive posture.  His hands were shaking.

168.  When two deputies grabbed Mr. Reed's left arm to put it behind his back for cuffing, Mr. Reed rolled over on his stomach and said, "oh, oh."

169.  Cpl. Byrd pointed the taser at Mr. Reed's chest.  Byrd told Mr. Reed he would be tased if he didn't put his left hand behind his back and warned "It's gonna hurt a lot."  "It's gonna fucking hurt bad."

170.  The video shows that Mr. Reed was still confused and not comprehending what the deputies wanted him to do.

171.  The deputies again grabbed Mr. Reed to place his hands behind his back.  When he attempted to roll away from them, Cpl. Byrd tased him.  Mr. Reed cried out in pain and put his hands up in a defensive posture saying, "Please, please, please."

172.  Cpl. Byrd again tased Mr. Reed, this time in drive stun mode, because he was not putting his hands behind his back.  At one point, a deputy said "Reed, hey, wake up," indicating that Mr. Reed still was not fully aware.

173.  After being tased a second time, Mr. Reed submitted.  He was cuffed behind the

back, leg ironed and pulled to his feet.  The video shows that as the deputies took him out of his cell, Mr. Reed asked several times "What did I do?"

174.  Mr. Reed suffered a cut on his head from this incident.  It is unclear from the deputies' reports whether the cut was the result of falling during the seizure or the deputies' efforts to cuff him.

175.  After a seizure, a person is often fatigued, dazed and not fully aware of his surroundings and can become belligerent, frightened and unable to communicate.

176.  Mr. Reed appeared dazed, tired and not fully aware of his surroundings on the video of his post-seizure period when deputies Byrd, Montrose, Jodrey, Kern and Starner entered his cell.

177.  These deputies were supposed to be there to help him get appropriate medical care.  Instead, they grabbed him, restrained him, frightened him and tased him twice for failing to obey their misguided commands.  Yet this use of force was reviewed and determined to be "justified."

178.  That same evening, after Mr. Reed was removed from his cell and taken to medical, Deputies Christopher Dishong and Matthew Carter took him to the Mount Carmel Hospital West Emergency Room for further examination and to fix the cut on his head.

179.  Deputy Dishong tased Mr. Reed again in the ER, while he was "leg ironed" to a hospital stretcher.[4]  According to Deputy Carter's report, he was using the bathroom at this time and was not present when Deputy Dishong tased Mr. Reed.

180.  The "Attending Note" from the hospital records states that Mr. Reed began standing up on the stretcher "talking loudly and not making sense" and that he was "shackled to the bed by the ankle at the time" the deputy tased him.  When tased, Mr. Reed fell off the bed, striking

---

[4] There is no video of the events at the hospital.

his head.

181.  Mr. Reed suffered another head laceration from the fall, requiring stitches.

182.  According to Deputy Dishong's report, Mr. Reed stood up on the hospital bed and "began to mutter to himself."  When Mr. Reed did not lie down on the bed, the deputy tased him, causing Mr. Reed to "stiffen" and fall off the bed, striking his head on the wall and floor and sustaining the second head laceration.

183.  According to Taser International's warnings for the X26 taser, the probes cause "neuromuscular interruption" which renders the subject unable to move and may cause him to fall.

184.  Taser International therefore warns that subjects are especially at risk of further injury if they could fall and suffer an impact injury to the head when tased; are on an elevated or unstable surface when tased; or are in restraints that incapacitate or immobilize them when tased. All of these risk factors were present at the time Deputy Dishong tased Mr. Reed in the hospital ER.

185.  The Franklin County Sheriff's Office policy for the X 26 taser also states that tasers should not be deployed upon persons who are restrained by a mechanical device such as handcuffs, leg irons or a restraint chair.

186.  Tasing Mr. Reed again at the ER, in a situation where he was leg ironed to a hospital bed and thus had very little ability to move about, was unnecessary, gratuitous, a violation of Sheriff's Office policy, and subjected him to exactly the kind of further injury that Taser International warned of.  Despite this, the Deputy's use of the taser was reviewed and deemed a "justified" use of force.

**XII.  MICHAEL REED INDIVIDUAL CAUSE OF ACTION - 42 U.S.C. § 1983 AS TO DEFENDANTS BYRD, MONTROSE, JODREY, KERN, STARNER,  AND DISHONG**

187.  At all times relevant to this Complaint, Defendants Byrd, Montrose, Jodrey, Kern, Starner, and Dishong were state actors by virtue of their employment with the Franklin County Sheriff's Office.

188.  42 U.S.C. § 1983 provides that no person, acting under color of state law, shall deprive a citizen of his rights arising under the Constitution or federal laws.

189.  At the time of this incident Mr. Reed had already been committed to a psychiatric hospital pursuant to the NGRI adjudication.  He should not even have been in the jail at the time he was tased.

190.  Therefore, Mr. Reed was protected by the Fourteenth Amendment.

191.  Under the Fourteenth Amendment, Plaintiff Reed had the substantive due process right to be free from undue bodily harm at the hands of state actors.

192.  Although Mr. Reed was not convicted of a crime and thus not subject to punishment, but rather was adjudicated NGRI, that is, determined to have been not criminally responsible for the crime charged, Plaintiff Reed pleads in the alternative a violation of his rights under the Eighth Amendment.

193.  The Eighth Amendment sets parameters on punishment of prisoners who are serving a sentence pursuant to conviction of a crime.  It prevents state actors from unnecessarily and wantonly inflicting pain upon prisoners.

194.  Whether analyzed under Eighth or Fourteenth Amendment standards, however, the use of the taser against Plaintiff Reed multiple times in his cell by Defendants Byrd, Montrose, Jodrey, Kern, Starner, and by Deputy Dishong at the hospital emergency room was unduly and unnecessarily harmful, as well as a wanton infliction of pain that violated his Constitutional right

to be free from the use of excessive force.

195.   The fact that Defendants Montrose, Jodrey, Kern, and Starner were not the officers who tased Mr. Reed during the incident in his cell does not diminish their culpability.  These deputies were present, were active participants in this incident, heard Deputy Byrd threaten to tase Mr. Reed if he did not cooperate and therefore, had the opportunity to stop this use of excessive force from occurring.

196.   As a direct and proximate result of the excessive use of force by Defendants Byrd, Montrose, Jodrey, Kern, Starner, and Dishong, Plaintiff Reed suffered compensable physical pain and injuries as well as emotional distress.

197.   Plaintiff Reed is also entitled to punitive damages because Defendants Byrd, Montrose, Jodrey, Kern, Starner, and Dishong acted with reckless and wanton indifference to Plaintiff's Eighth or Fourteenth Amendment rights to be free of excessive force.

## XIII. MICHAEL REED INDIVIDUAL CAUSE OF ACTION - 42 U.S.C. § 1983 AS TO DEFENDANTS FRANKLIN COUNTY, SHERIFF JIM KARNES, CHIEF DEPUTY MARK BARRETT, CHIEF DEPUTY STEVE MARTIN, JANE/JOHN DOES, JANE/JOHN ROES, MAJOR MICHAEL HERRELL AND MAJOR DOUG EDGINGTON

198.   Defendants Karnes, Chief Deputies Barrett and Martin, Deputies Jane/John Does, Deputies Jane/John Roes, and Majors Herrell and Edgington are all state actors by virtue of their employment with the Franklin County Sheriff's Office.

199.   Defendants Sheriff Karnes, Chief Deputies Barrett, Martin, Jane/John Does, Jane/John Roes, Herrell and Edgington have created a policy and practice of excessive and abusive use of tasers by Franklin County Sheriff's corrections officers because:

> a)   They routinely ratify corrections deputies' misuse of tasers by reviewing the use of force reports and videotapes and finding the use of tasers to be "justified," as they did in Plaintiff Reed's case.

b) As in Plaintiff Reed's case, they fail to discipline deputies whose use of tasers violates the Franklin County Sheriff's own written policy for deployment of tasers; departs from well-established standards of law enforcement and corrections professionals; poses substantial and unjustifiable risks to the health, safety and physical integrity of the persons tased; causes needless physical harm and mental distress; and violates the Constitutional rights of persons in the custody of the Franklin County Corrections Centers.

c) As evidenced by the deputies' repeated misuse of tasers as set forth in this Complaint, Defendants Sheriff Karnes, Chief Deputies Barrett, Martin, Jane/John Does, Jane/John Roes, Herrell and Edgington have failed to properly train corrections deputies to use tasers in accordance with Sheriff's Office written policy; to use tasers in accordance with manufacturer's warnings for safe use on subjects; to use tasers in accordance with accepted law enforcement principles for use of force; and to use tasers in accordance with the federal constitutional rights of persons in custody to be free of excessive force.

200. The policies and practices of Defendants Sheriff Karnes, Chief Deputies Barrett and Martin, Deputies Jane/John Does, Deputies Jane/John Roes, and Majors Herrell and Edgington in their official and individual capacities constitutes deliberate indifference that in turn makes Defendant Franklin County accountable for injuries to Plaintiff Reed. *Leach v. Shelby County Sheriff,* 891 F. 2d 1241, 1245 - 1246, 1248 (6th Cir. 1989).

201. Defendants Franklin County, Sheriff Karnes, Chief Deputies Barrett and Martin, Deputies Jane/John Does, Deputies Jane/John Roes, and Majors Herrell and Edgington acted with deliberate indifference by their failure to train deputies in the proper use of reasonable force and by ratifying the use of excessive and gratuitous force against Plaintiff Reed while acting under color of state law.

33

202.   These actions and failures to act by these Defendants caused Plaintiff Reed to be subjected to excessive and unreasonable force in violation of either the Eighth or Fourteenth Amendments, from which he suffered compensable physical pain and injuries as well as emotional distress.

203.   Plaintiff Reed is also entitled to punitive damages against these Defendants because they acted with reckless or callous indifference to Plaintiff's Fourteenth Amendment, or in the alternative, Eighth Amendment, right to protection against the use of excessive force.

## XIV. PLAINTIFF DAWN FIORE-BRUNO -STATEMENT OF FACTS

204.   Plaintiff Fiore-Bruno has a history of treatment for mental illness as well as a reported history of both physical and sexual abuse.

205.   Plaintiff Fiore-Bruno was arrested for disorderly conduct, a misdemeanor, on December 10, 2009.  She was brought to FCCC II for booking very early in the morning on that date, around 1:30 am.

206.   The video of the booking area shows that before Ms. Fiore-Bruno was brought in, two male deputies can be overheard saying "I love belly shirts" and "they're hot."

207.   When Ms. Fiore-Bruno arrived she was talking in a loud voice and cursing, but not physically threatening or violent in any way.

208.   Two female deputies, Shannon Beaudry and Elizabeth Klein, sat Ms. Fiore-Bruno down on a bench and removed her shoes and socks.  Ms. Fiore-Bruno did not resist.

209.   Deputies Beaudry and Klein then took Ms. Fiore-Bruno to a line drawn on the floor in front of the booking counter, where she stood without resisting.

210.   As she was being escorted to the booking counter Ms. Fiore-Bruno asked if she was being taped and said "I want to be on fucking tape."

211.   Deputies Beaudry and Klein removed Ms. Fiore-Bruno's belt and searched her

pockets.  Again, she did not resist.

212.  A nurse behind the booking counter asked her if she had any medical problems.  Ms. Fiore-Bruno replied "yes."

213.  The nurse asked Ms. Fiore-Bruno, "What are they?" Ms. Fiore-Bruno responded "BPD."[5]  The nurse asked Ms. Fiore-Bruno if she was going to answer and Ms. Fiore-Bruno responded in a loud voice "what'd you say to me?"  The nurse replied, "I'm not gonna keep repeating myself." Ms. Fiore-Bruno then yelled "I said BPD."  She also called the nurse a "bitch."  The nurse's response was, "Ok, I'm done. I'm not gonna be talked to like that."

214.  Female deputies Beaudry and Klein, accompanied by male deputies Derek Shively, Jason Brobst, Steven Dean and Keith Miller, took Ms. Fiore-Bruno to a holding cell, placed her face down on the floor and began forcibly stripping off her clothes.  Cpl. Lee Vandette was also present in the cell and observing the take-down and stripping of Ms. Fiore-Bruno.

215.  As she was being stripped, Ms. Fiore-Bruno constantly yelled for a camera to record the event and accused the deputies of being abusive.  Deputy Jason Brobst, who was at Ms. Fiore-Bruno's right arm, began yelling at her to stop pulling her arm away "and do what you're told."

216.  Deputy Steven Dean drew his taser and pointed the laser light at Ms. Fiore-Bruno. The two female deputies continued to pull off Ms. Fiore-Bruno's clothes with male deputies present in the cell as she was being stripped.

217.  Ms. Fiore Bruno said, "There's no reason to make me naked."  At that point, deputies began to roll her over face up while she was topless and Ms. Fiore-Bruno continued yelling, "I want a camera."  Deputy Brobst told her to "Roll over and do what you're told" and

---

[5] Ms. Fiore-Bruno has been diagnosed with Borderline Personality Disorder (BPD) and a mood disorder.

"You're gonna start doing what you're told."

218.   As the female deputies began to remove Ms. Fiore-Bruno's jeans and underwear, she tried to roll over on her stomach.  Deputy Dean then placed his taser on her left buttock and drive stunned her.

219.   Four male deputies and two female deputies were present as her jeans and underwear were being removed.  Ms. Fiore-Bruno said, crying, "There should not be a male in here."

220.   Deputy Brobst told her "this was all because you refused to do what you were told to do."  Ms. Fiore-Bruno asked "what if I was your sister?"

221.   After being stripped completely naked, Ms. Fiore-Bruno was left lying, face down, on the cell floor.  A male deputy warned her she would be tased again if she moved before deputies exited the cell.  The only clothing they left for her was a safety gown, despite the fact that there was no objective indication that Ms. Fiore-Bruno intended to harm herself in any way.

222.   It was unnecessary to escalate Ms. Fiore-Bruno's booking by subjecting her to this degrading process, during which she was tased for her ineffectual resistance to being forcibly stripped by multiple deputies.

223.   Ms. Bruno has a history of physical and sexual abuse and mental illness.[6]  The process of being forcibly stripped and tased in the presence of male deputies during booking for a misdemeanor arrest was particularly traumatizing and humiliating for Ms. Fiore-Bruno given her history.

224.   Tasing Ms. Fiore-Bruno was determined to be a "justified" use of force.

---

[6] This is not uncommon, as studies show that eighty percent of women in prisons and jails have been victims of sexual and physical abuse.  Smith, B., "An end to silence: Woman prisoners' handbook on identifying and addressing sexual misconduct," National Women's Law Center (April 1998).

## XV.   DAWN FIORE-BRUNO INDIVIDUAL CAUSE OF ACTION - 42 U.S.C. § 1983 AS TO DEFENDANTS BEAUDRY, KLEIN, SHIVELY, BROBST, DEAN, MILLER AND VANDETTE

225.   At all times relevant to this Complaint, Defendants Beaudry, Klein, Shively, Brobst, Dean, Miller and Vandette were state actors by virtue of their employment with the Franklin County Sheriff's Office.

226.   42 U.S.C. § 1983 provides that no person, acting under color of state law, shall deprive a citizen of his rights arising under the Constitution or federal laws.

227.   As an arrestee, Plaintiff Fiore-Bruno was protected by the Fourth Amendment's protection against use of excessive force by law enforcement.

228.   Under the Fourth Amendment, law enforcement officers may only use reasonable force, that is, the amount of force that is reasonable to protect officers from a perceived threat.

229.   The use of the taser against Plaintiff Fiore-Bruno by Defendants Beaudry, Klein, Shively, Brobst, Dean, Miller and Vandette was a willful, callous and gratuitous act that violated Plaintiff Fiore-Bruno's Fourth Amendment right to be free from the use of excessive force.

230.   The fact that Defendants Beaudry, Klein, Shively, Brobst, Miller and Vandette were not the officers who tased Ms. Fiore-Bruno does not diminish their culpability.  These deputies were present, were participants in the forced removal of Ms. Fiore-Bruno's clothing, were aware that Deputy Dean was going to tase Ms. Fiore-Bruno as they were holding her, and had the opportunity to stop it from occurring.  As a direct and proximate result of the excessive use of force by Defendants Beaudry, Klein, Shively, Brobst, Dean, Miller and Vandette, Plaintiff Fiore-Bruno suffered compensable physical pain and injuries as well as emotional distress.

231.   Plaintiff Fiore-Bruno is also entitled to punitive damages because Defendants Beaudry, Klein, Shively, Brobst, Dean, Miller and Vandette acted with reckless indifference to Plaintiff's Fourth Amendment right to protection against the use of excessive force.

**XVI. DAWN FIORE-BRUNO INDIVIDUAL CAUSE OF ACTION - 42 U.S.C. § 1983 AS TO DEFENDANTS FRANKLIN COUNTY, SHERIFF JIM KARNES, CHIEF DEPUTY MARK BARRETT, CHIEF DEPUTY STEVE MARTIN, JANE/JOHN DOES, JANE/JOHN ROES, MAJOR MICHAEL HERRELL AND MAJOR DOUG EDGINGTON**

232. Defendants Sheriff Karnes, Chief Deputies Barrett and Martin, Deputies Jane/John Does, Deputies Jane/John Roes, and Majors Herrell and Edgington are all state actors by virtue of their employment with the Franklin County Sheriff's Office.

233. Defendants Sheriff Karnes, Chief Deputies Barrett, Martin, Jane/John Does, Jane/John Roes, Herrell and Edgington have created a policy and practice of excessive and abusive use of tasers by Franklin County Sheriff's corrections officers because:

a) They routinely ratify corrections deputies' misuse of tasers by reviewing the use of force reports and videotapes and finding the use of tasers to be "justified," as they did in Plaintiff Fiore-Bruno's case.

b) As in Plaintiff Fiore-Bruno's case, they fail to discipline deputies whose use of tasers violates the Franklin County Sheriff's own written policy for deployment of tasers; departs from well-established standards of law enforcement and corrections professionals; poses substantial and unjustifiable risks to the health, safety and physical integrity of the persons tased; causes needless physical harm and mental distress; and violates the Constitutional rights of persons in the custody of the Franklin County Corrections Centers.

c) As evidenced by the deputies' repeated misuse of tasers as set forth in this Complaint, Defendants Sheriff Karnes, Chief Deputies Barrett, Martin, Jane/John Does, Jane/John Roes, Herrell and Edgington have failed to properly train corrections deputies to use tasers in accordance with Sheriff's Office written policy; to use tasers in accordance with manufacturer's warnings for safe use on subjects; to use tasers in accordance with accepted law enforcement principles for use of force; and to use tasers in accordance with

38

the federal constitutional rights of persons in custody to be free of excessive force.

234. The policies and practices of Defendants Sheriff Karnes, Chief Deputies Barrett and Martin, Deputies Jane/John Does, Deputies Jane/John Roes, and Majors Herrell and Edgington in their official and individual capacities constitutes deliberate indifference that in turn makes Defendant Franklin County accountable for injuries to Plaintiff Fiore-Bruno. *Leach v. Shelby County Sheriff,* 891 F. 2d 1241, 1245 - 1246, 1248 (6th Cir. 1989)

235. Defendants Franklin County, Sheriff Karnes, Chief Deputies Barrett and Martin, Deputies Jane/John Does, Deputies Jane/John Roes, and Majors Herrell and Edgington acted with deliberate indifference by their failure to train deputies in the proper use of reasonable force and by ratifying the use of excessive and gratuitous force against Plaintiff Fiore-Bruno while acting under color of state law.

236. These actions and failures to act by these Defendants caused Plaintiff Fiore-Bruno to be subjected to excessive and unreasonable force in violation of the Fourth Amendment, from which she suffered compensable physical pain and injuries as well as emotional distress.

237. Plaintiff Fiore-Bruno is also entitled to punitive damages against these Defendants because they acted with reckless or callous indifference to Plaintiff's Fourth Amendment right to protection against the use of excessive force.

## XVII. JURY DEMAND

238. Plaintiffs Shreve, Worley, Reed and Fiore-Bruno demand a trial by jury of all issues triable by a jury.

## XVIII. CLASS ACTION ALLEGATIONS AS AGAINST FRANKLIN COUNTY, SHERIFF KARNES, DEPUTY CHIEFS BARRETT AND MARTIN, JANE/JOHN DOES, JANE/JOHN ROES, AND MAJORS HERRELL AND EDGINGTON

239. Plaintiffs Shreve and Worley bring this action on behalf of themselves and on behalf of all others similarly situated solely for declaratory and injunctive relief pursuant to Fed. R. Civ.

P. 23(b)(2).

240.  Plaintiffs Shreve and Worley represent a class of person defined as follows:

a)  All persons who, now or at any future time during the pendency of this litigation, are or will be placed in the custody of the Franklin County Sheriff's Department at the Franklin County Corrections Centers.

241.  The proposed class is so numerous that joinder of all members is impracticable.

a)  Joinder is impracticable here because the class consists of thousands of current and future inmates.  Defendant Sheriff Karnes controls the information about the exact number of inmates at the FCCCs, so Plaintiffs Shreve and Worley cannot establish the precise number of class members.  However, the 2007 Annual Report of the Franklin County Sheriff's Office states that the average daily population of the FCCCs is over 1,850 inmates.

b)  Because this class action is seeking prospective injunctive relief, the presence of future or unknown members of a proposed class also makes joinder impracticable.

242.  There are also questions of law and fact presented in this Complaint that are common to the members of the proposed class. These questions include:

a)  Do FCCC deputies routinely use tasers on in violation of the constitutional rights of individuals in their custody?

b)  Have the Defendants failed to adequately train and supervise their deputies on the proper use of tasers?

c)  Do the Defendants routinely ratify the unconstitutional use of tasers by failing to discipline deputies for improper taser use?

d)  Do the Defendants routinely fail to follow their written policy on the use of

tasers?

243. The claims of Plaintiffs Shreve and Worley are typical of the claims of the members of the proposed class.

    a)    Plaintiffs Shreve and Worley's claims are typical of the claims of the putative class because they, along with all proposed class members, are at risk of having their constitutional rights violated through FCCC deputies' use of tasers.

    b)    Due to FCCC deputies' widespread, arbitrary, and excessive use of tasers against persons in custody at the Franklin County Corrections Centers, all of the putative class members are similarly at risk of the violation of their constitutional rights and seek the same relief to require the Defendants to discontinue their unconstitutional use of tasers.

    c)    Plaintiffs Shreve and Worley and the proposed class members would all be proceeding under the same legal theory - that the FCCC deputies' use of tasers violates the Plaintiffs' constitutional rights.

244. Defendants have acted or refused to act on grounds generally applicable to the proposed class, thereby making injunctive and declaratory relief appropriate to the class as a whole.

    a)    Class certification is appropriate here, where all class members are at risk of the violation of their constitutional rights, but their temporary status as arrestees and inmates will frustrate any attempt to achieve systemic declaratory or injunctive relief.

    b)    Rule 23(b)(2) was formulated to allow for class actions where parties, as here, seek broad injunctive relief to vindicate the civil rights of a large class of individuals.

245. The named Plaintiffs, Shreve and Worley, will fairly and adequately protect the interests of the class. Plaintiffs Shreve and Worley have no interest that is now or may be

potentially antagonistic to the interests of the proposed class.

246.  Plaintiffs Shreve and Worley are represented by experienced attorneys employed by Ohio Legal Rights Service (OLRS).   OLRS lawyers have extensive experience in litigating federal court class action cases involving federal rights and federal civil rights claims.

a)  OLRS lawyers have represented clients in many complex litigation matters over several decades, including serving as class counsel.  For example, OLRS lawyers have served as class counsel for approximately 20 years in *Doe v. State of Ohio*, Docket No. 2:91-cv-464 (S.D. Ohio), concerning the state's implementation of its duties under the Individuals with Disabilities Education Act and its funding for special education services. In *Rone v. Fireman*, Docket No. C75-355A (N.D. Ohio), OLRS successfully represented a class of patients at a state psychiatric hospital against various state agency Defendants to improve conditions at Western Reserve Psychiatric Habilitation Center.  Similarly, in *Coe v. Hyde*, Docket No. C2-87-719 (S.D. Ohio), OLRS lawyers represented a class of patients at Central Ohio Psychiatric Hospital and succeeded in its challenges to the conditions at that facility.  In *Cleveland v. Ohio Department of Mental Health*, Docket No. 89-cv-3658 (Franklin Cty. Common Pleas), OLRS lawyers served as class counsel to challenge the state's procedures for involuntary medicating individuals with mental illness, and succeeding in obtaining a permanent injunction for the Plaintiff class.  Many of these cases involved the vindication of individuals' constitutional rights through § 1983 litigation, and OLRS' lawyers extensive involvement in these and other similar cases demonstrates that OLRS lawyers are qualified to represent the Plaintiff class.

b)  OLRS has sufficient resources to adequately represent the class.   OLRS is an independent state agency created in 1975 by state law to protect and advocate the rights of

people with disabilities, and is Ohio's federally designated Protection and Advocacy

system.  OLRS Program staff includes ombudspersons, disability rights advocates, and

attorneys who advocate for individual and systemic change through individual, group and

class action cases, monitoring policies and legislative activity, and providing education and

training.  OLRS is committed both in time and resources to this litigation to ensure that the

current abuses of people with disabilities and other people at the Franklin County

Corrections Centers are brought to an end.

## XIX. CLASS ACTION CLAIM OF ROBERT SHREVE AND MICHAEL WORLEY ON BEHALF OF A PROPOSED CLASS UNDER 42 U.S.C. § 1983 AS TO DEFENDANTS FRANKLIN COUNTY, SHERIFF KARNES, DEPUTY CHIEFS BARRETT AND MARTIN, JANE/JOHN DOES, JANE/JOHN ROES, AND MAJORS HERRELL AND EDGINGTON IN THEIR OFFICIAL CAPACITIES

247.  Defendants Sheriff Karnes, Chief Deputies Barrett and Martin, Deputies Jane/John

Does, Deputies Jane/John Roes, and Majors Herrell and Edgington are all state actors by virtue

of their employment with the Franklin County Sheriff's Office.

248.  Corrections deputies at the Franklin County Corrections Centers have subjected

Plaintiffs Shreve and Worley, and will continue to subject members of the proposed class, to the

abusive and excessive use of tasers in a manner that constitutes excessive, unreasonable and

disproportionate force; recklessly and wantonly inflicts mental pain, emotional distress and

trauma; is malicious and sadistic; inflicts corporal punishment for minor violations; violates the

Franklin County Sheriff's own written policy for deployment of tasers; departs from well-

established standards of law enforcement and corrections professionals; poses substantial and

unjustifiable risks to the health, safety and physical integrity of arrestees and inmates; and

violates the Constitutional rights of those persons in the custody of the Franklin County

Corrections Centers, in violation of their rights under the Fourth, Eighth and Fourteenth

Amendments as enforced through 42 U.S.C. § 1983.

249. Defendants Sheriff Karnes, Chief Deputies Barrett, Martin, Jane/John Does, Jane/John Roes, Herrell and Edgington have created a policy and practice of excessive and abusive use of tasers by Franklin County Sheriff's corrections officers because:

a) They routinely ratify corrections deputies' misuse of tasers by reviewing the use of force reports and videotapes and finding the use of tasers to be "justified."

b) They fail to discipline deputies whose use of tasers violates the Franklin County Sheriff's own written policy for deployment of tasers; departs from well-established standards of law enforcement and corrections professionals; poses substantial and unjustifiable risks to the health, safety and physical integrity of the persons tased; causes needless physical harm and mental distress; and violates the Constitutional rights of persons in the custody of the Franklin County Corrections Centers.

c) They have failed to properly train corrections deputies to use tasers in accordance with Sheriff's Office written policy; to use tasers in accordance with manufacturer's warnings for safe use on subjects; to use tasers in accordance with accepted law enforcement principles for use of force; and to use tasers in accordance with the federal constitutional rights of persons in custody to be free of excessive force.

250. The policies and practices of Defendants Sheriff Karnes, Chief Deputies Barrett, Martin, Jane/John Does, Jane/John Roes, Herrell and Edgington in their official capacities in turn make Defendant Franklin County accountable for the harm to Plaintiffs Shreve and Worley and members of the proposed class.

251. Defendants Franklin County, Sheriff Karnes, Chief Deputies Barrett, Martin, Jane/John Does, Jane/John Roes, Herrell and Edgington, under color of state law, have acted and continue to act with deliberate indifference by their failure to train deputies in the proper use of

reasonable force and by ratifying the use of excessive and gratuitous force against Plaintiffs Shreve and Worley and members of the proposed class.

252.   These actions and failures to act by these Defendants have caused Plaintiffs Shreve and Worley and will continue to cause members of the proposed class to be subjected to excessive and unreasonable force in violation of the Fourth, Eighth and Fourteenth Amendments.

## XX.  NEED FOR DECLARATORY AND INJUNCTIVE RELIEF

253.   The practices involving misuse of tasers discussed in this Complaint are ongoing because the culture at the Franklin County Sheriff's Office fosters them.

254.   There is no accountability for the misuse of tasers by Franklin County corrections deputies. These practices have repeatedly been found to be "justified" by the chain of command at the Franklin County Sheriff's Office, including facility commanders, the Internal Affairs Bureau and the Chief Deputy of Corrections.  Out of a sample of 180 use of force reports involving tasers since January 1, 2008, the use of force was found "not justified" in fewer than a handful of cases.

255.   Defendants Sheriff Karnes, Barrett, Martin, John/Jane Does, John/Jane Roes, Herrell and Edgington have repeatedly authorized and ratified the custom, policy and practice of misuse of tasers by the corrections deputies whom they supervise and for whom they set policy.

256.   These Defendants also have failed to adequately train and supervise corrections deputies to use tasers in a manner that is safe, appropriate, conforms to policy and adheres to Constitutional standards for use of force. By their actions, and their failures to act, these Defendants have been and remain deliberately indifferent to the risk of violating the Constitutional rights of Plaintiffs Shreve and Worley and the members of the proposed Plaintiff class.

257.   The deliberate indifference of Defendants Sheriff  Karnes, Barrett, Martin, John/Jane Does, John/Jane Roes, Herrell and Edgington results in the failure to adequately train, supervise and discipline corrections deputies in their use of tasers has caused and will continue to cause violations of the Constitutional rights of Plaintiffs Shreve and Worley and the members of the proposed Plaintiff class.

258.   These ongoing practices present the real threat of physical injury and psychological trauma to individuals who currently are in custody at the Franklin County Corrections Centers or will be in custody of the Franklin County Correction Centers during the pendency of this litigation.

259.   Plaintiffs Shreve and Worley, as well as the members of the proposed class, are entitled to declaratory and injunctive relief.  Defendants have engaged and are continuing to engage in the challenged policies and practices that were used against Plaintiffs Shreve and Worley.

260.   Defendants have acted and, without immediate injunctive relief, will continue to act under color of state law to deprive Plaintiffs Shreve and Worley and the members of the proposed class of their Constitutional rights to be free of excessive force.

261.   Plaintiffs Shreve and Worley and the members of the proposed class have no adequate remedy at law.  In the absence of injunctive relief they will continue to suffer the real threat of irreparable harm as a result of the existence of a policy and practice that encourages and approves the misuse of tasers by Franklin County Corrections deputies.

## XXI. PRAYER FOR RELIEF

Therefore, Plaintiffs request that this Court:

A.   Assume jurisdiction over this matter;

B.   Certify the proposed class as:  All persons who, now or at any future time during the

pendency of this litigation, are or will be placed in the custody of the Franklin County Sheriff's Department at the Franklin County Corrections Centers;

C.    Issue a declaratory judgment holding that the Defendants have violated the rights of Plaintiffs Shreve and Worley and the proposed class under the United States Constitution as enforced through 42 U.S.C. § 1983;

D.    Issue such temporary or preliminary relief as requested by Plaintiffs Shreve and Worley in the course of these proceedings to prevent irreparable harm from occurring to them and the proposed class;

E.    Enjoin the Defendants from continuing to violate the Constitutional rights of Plaintiffs Shreve and Worley and the members of the proposed class as set forth in this Complaint;

F.    Enjoin the Defendants from continuing to violate their own policy on use of the X26 taser;

G.    Appoint an expert with extensive experience in corrections who is not associated with any party to this action to monitor, review, and oversee all use of force reports involving deployment of tasers by Franklin County Sheriff's corrections deputies and to recommend appropriate discipline and conduct training of deputies where warranted;

H.    Grant judgment in favor of Plaintiffs Shreve, Worley, Reed and Fiore-Bruno, and against the Defendants, individually and collectively, for compensatory damages for Plaintiffs' injuries, pain and suffering and emotional distress in an amount to be proven at trial;

I.    Award punitive damages to Plaintiffs Shreve, Worley, Reed and Fiore-Bruno and against the Defendants, individually and collectively, in an amount to be proven at trial;

J.    Award Plaintiffs their attorneys' fees and costs as permitted by law; and

K.    Provide such other relief as is just and equitable.

Respectfully submitted,

s/ Jane P. Perry
Jane P. Perry (0029698)
jperry@olrs.state.oh.us
Trial Attorney for Plaintiffs
Kristen N. Henry (0082382)
khenry@olrs.state.oh.us
Kerstin Sjoberg-Witt (0076405)
ksjoberg-witt@olrs.state.oh.us
Legal Director
OHIO LEGAL RIGHTS SERVICE
50 W. Broad Street, Suite 1400
Columbus, Ohio 43215
(614) 466-7264 - telephone
(614) 644-1888 - fax

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing First Amended Individual Complaint

for Damages and First Amended Class Action Complaint for Declaratory and Injunctive Relief

was filed on August 27, 2010, with the Clerk of Court using the CM/ECF system, which will

provide notice of such filing to all registered parties.

s/Jane P. Perry
Jane P. Perry (0029698)
jperry@olrs.state.oh.us
Trial Attorney for Plaintiffs