IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROBERT SHREVE, et al.,

        Plaintiffs,

v.

FRANKLIN COUNTY, OHIO
et al.,

        Defendants.

Case No. 2:10-cv-644
JUDGE SARGUS
MAGISTRATE JUDGE ABEL

## OPINION AND ORDER

Presently before the Court is the Fraternal Order of Police, Capital City Lodge No. 9's Motion to Intervene (Doc. 59). For the reasons set forth herein, the motion is **GRANTED**.

I.

Plaintiffs in this class action seek to enjoin an alleged pervasive practice of sheriff's deputies at the Franklin County, Ohio, Corrections Centers subjecting prisoners to excessive force through the use of stun guns manufactured by TASER International, Inc. Defendants include Franklin County, the sheriff of Franklin County, and various sheriff deputies. By Opinion and Order dated December 14, 2010, the Court provisionally granted Plaintiffs' motion for class certification, and granted the motion to intervene of the United States of America and the motion to appear as amicus curiae of the National Fraternal Order of Police. (*See* Doc. 69.) The Court now addresses the motion of the Fraternal Order of Police, Capital City Lodge No. 9 ("FOP") to intervene as a defendant in this action.

II.

The FOP seeks to intervene as a matter of right pursuant to Rule 24(a), and in the alternative, seeks permission to intervene under Rule 24(b). The Court finds that the FOP has

1

timely established its right to intervene and does not address whether permissive intervention would be appropriate in this case.[1]

Rule 24(a) provides that:

On timely motion, the court must permit anyone to intervene who:

... (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a). The Sixth Circuit has extrapolated the following four elements from Rule 24(a) that must be satisfied to establish a right to intervene:

(1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect their interest may be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervenor's interest.

*Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007). The FOP has met each of these factors.

## A. Timeliness

The Court considers "all relevant circumstances" in determining whether the FOP's motion to intervene is timely. *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990). Factors that should be considered in evaluating timelines include (1) the progression of the suit; (2) the purpose for intervention; (3) the amount of time before attempted intervention during which the intervening party was aware of its potential interest in the case; (4) prejudice to the original parties that could arise as a result of the intervenor's failure to intervene upon

---

[1] The Court notes that FOP's claim for permissive intervention would contain possible jurisdictional deficiencies. *See, e.g., E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) ("Permissive intervention . . . has always required an independent basis for jurisdiction.")

discovering its interest in the case; and (5) any unusual circumstances weighing for or against intervention. *Id.* The Plaintiffs' have not contested the timeliness of the FOP's motion.

The FOP's motion was filed on December 6, 2010. At that time, the hearing on Plaintiffs' motion for a preliminary injunction was scheduled for January 10, 2011. While the date of the hearing was subsequently moved to January 26, 2011, the change in schedule was unrelated to the FOP's potential intervention in this case. On December 6, 2010, the parties were engaged in discovery in preparation for the hearing, and the Court had not ruled on several key motions, including Plaintiffs' motion for class certification and the United State's motion to intervene. Thus, the Court finds that this suit had not significantly progressed at the point when the FOB moved for intervention, and the FOP did not seek a delay in the matter.

The FOP's purpose in intervening is the protection of its contractual and statutory interests as the exclusive collective bargaining representative of several of the named defendants in this case. "The 'purposes of intervention' prong of the timeliness element normally examines *only* whether the lack of an earlier motion to intervene should be excused, given the proposed intervenor's purpose . . . ." *Stupak-Thrall v. Glickman*, 226 F.3d 467, 479 n.15 (6th Cir. 2000) (emphasis in original). Here, there is no indication as per the third prong of the timeliness analysis that the FOP did not act promptly to intervene upon becoming aware of the subject of settlement negotiations between Defendants and the United States. However, even if some delay were present, the FOP's purported interest is substantial enough to counterbalance the delay.

As per the fourth factor, the Court finds that none of the parties would be prejudiced by allowing the FOP to intervene at this point in the litigation. Finally, the Court cannot identify any unusual other circumstances.

3

## B. Legal Interest

The second element necessary for an intervention of right under Rule 24(a) requires that "the proposed intervenor has a substantial legal interest in the subject matter of the case." *Coal. to Defend Affirmative Action*, 501 F.3d at 779. The Sixth Circuit has adopted "a rather expansion notion" of the type of interest required to intervene as a matter of right. *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997).

Pursuant to Chapter 4117 of the Ohio Revised Code, the FOP is the exclusive collective bargaining representative of Franklin County deputy sheriffs below the rank of major. Under Ohio law, the Sheriff is therefore required to bargain with the FOP as to "wages, hours, terms and other conditions of employment." OHIO REV. CODE § 4117.03(A)(4). As such, the FOP represents that the relief sought by the Plaintiffs, if granted, would impact the terms and conditions of employment of the deputy sheriffs established by a collective bargaining agreement ("CBA") with the Sheriff. Specifically, the FOP points to the prayer for relief of the United State's Complaint in Intervention, which, *inter alia*, requests the Court to appoint an expert "to monitor, review, and oversee all uses of force involving deployment of tasers by Franklin County Sheriff's corrections deputies and to recommend appropriate discipline and conduct training of deputies where warranted." (Doc. 70 at 8–9.) According to the FOP, should this relief be granted, it will impact certain provisions in the CBA, including a provision prohibiting the change by the Sheriff of "past practices" not specifically covered by the CBA in the absence of good faith negotiations, provisions of the CBA governing the discipline of deputies, and provisions of the CBA guaranteeing the FOP negotiating rights for matters affecting deputy working conditions and safety. (*See* Doc. 59, Ex. A at 6–7, 17–23, 31, & 72.)

4

Plaintiffs contend that the FOP's stated interest does not justify intervention as a matter of right on two grounds. First, Plaintiffs look to *Alston v. Coughlin*, 109 F.R.D. 609 (S.D.N.Y. 1986), in asserting that the FOP's interest is not directly related to the subject matter of this action. According to Plaintiffs, this is an action arising under 42 U.S.C. § 1983, not a labor case. Second, Plaintiffs assert that, as the FOP's interest arises under Ohio law, the federal courts are not the proper forum for resolving claims related to collective bargaining rights created by state law. In support of this contention, Plaintiffs cite Judge Marbley's decision in *S.H. v. Strickrath*, 251 F.R.D. 293 (S.D. Ohio 2008), and § 4117.10(A) of the Ohio Revised Code, which provides that laws pertaining to civil rights prevail over conflicting provisions in Ohio public collective bargaining agreements. Plaintiffs also contend that any interests that could be asserted by the FOP arising from the FOP's collective bargaining rights are within the exclusive jurisdiction of the Ohio State Employment Relations Board ("SERB").

The Court is unpersuaded by Plaintiffs' contentions and holds that the FOP's asserted interest is substantial and within the subject matter of this case. While Plaintiffs are correct in stating that this action arises pursuant to § 1983, the requested relief sought by Plaintiffs, if granted, will potentially have a substantial impact on the terms of the CBA and the collective bargaining rights of the FOP and its members. In this regard, *Alston* is readily distinguishable from the case at bar.

In *Alston*, inmates at Fishkill Correctional Facility alleged constitutional violations arising from overcrowding. *Alston*, 109 F.R.D. at 610. The union representing the prison's correctional staff sought to intervene as a matter of right alleging an impact on the union members' reassignment rights, which were based on seniority. *Id.* at 613. In denying the motion to intervene, the court held that the interests asserted by the union were not directly related to the

5

subject matter of the action and that an impairment of the union's interest was "too remote and contingent to justify intervention." *Id.* The court stated:

> The plaintiffs' complaint alleges violations of their constitutional rights caused by overcrowding at Fishkill. They neither allege defects in the seniority-based assignment system nor seek to change that system. Thus [the union's] interest relates to the subject matter of the suit only in an indirect and hypothetical manner.

*Id.* Here, the interest asserted by the FOP is much more directly related to the subject matter of this action. The FOP has pointed to specific provisions of the CBA that could be affected should the relief sought by Plaintiffs be granted, whereas, in *Alston*, there was no direct connection between the overcrowding of the prison and the seniority rights of the corrections staff.

*Strickrath* is also distinguishable from the case at bar. In *Strickrath*, Judge Marbley denied the Ohio Civil Service Employees Association ("OCSEA")'s motion to intervene in a class action involving conditions at juvenile detention facilities operated by the Ohio Department of Youth Services. *Strickrath*, 251 F.R.D. at 295. The class action had commenced in December 2004, and, after lengthy attempts to reach a settlement agreement, the parties eventually agreed to a stipulated injunction in April 2008. *Id.* at 295–97. Only in March 2008, two weeks before the final injunction was agreed to, did the OCSEA move to intervene, asserting that approval of the injunction would jeopardize the rights of OCSEA's members under their collective bargaining agreement. *Id.* at 297. Significantly, Judge Marbley determined that the attempted intervention was not timely, and thus did not consider the remaining elements for establishing intervention as a matter of right. *See id.* at 303. Thus, Judge Marbley's opinion did not directly address the issue presently under consideration.

The Court notes, however, that there is some overlap between the "purposes of intervention prong" of the timeliness analysis and the "substantial interest" element of a Rule 24(a) intervention. Plaintiffs cite Judge Marbley's discussion of the purposes of intervention

6

prong to support their contentions that any interest that the FOP has in this matter must be adjudicated before SERB. According to Judge Marbley, the purposes of intervention prong weighed against the timeliness of OSCEA's attempted intervention because

> the Court does not have jurisdiction to resolve the union's grievances. OCSEA moves to block the settlement on the grounds that the stipulated injunction violates the CBA. Pursuant to § 4117 of the Ohio Revised Code, [SERB] has exclusive jurisdiction to adjudicate claims that arise from or are dependent on the collective bargaining rights of public employees.

*Id.* at 302.

> The Supreme Court of Ohio has stated that
>
> exclusive jurisdiction to resolve charges of unfair labor practices is vested in SERB in two general areas: (1) where one of the parties files charges with SERB alleging an unfair labor practice under R.C. 4117.11; or (2) a complaint brought before the court of common pleas alleges conduct that constitutes an unfair labor practice specifically enumerated in R.C. 4117.11, and the trial court therefore dismisses the complaint for lack of subject-matter jurisdiction.

*City of E. Cleveland v. E. Cleveland Firefighters Local 500, I.A.F.F.*, 637 N.E.2d 878, 880 (Ohio 1994). As Plaintiffs have pointed out, this action "is an excessive force case based on the civil rights law in 42 U.S.C. § 1983, not a labor case." (Doc. 68 at 2.) The subject of this action does not involve allegations that Defendants have violated the CBA or that unfair labor practices have occurred as was the case in *Strickrath*, where the OCSEA alleged that, by agreeing to the injunction, the Ohio Department of Youth Services violated the terms of the collective bargaining agreement. Here, the FOP does not allege that the Sheriff is about to commit an unfair labor practice. Instead, it argues that provisions of the CBA could be vitiated by an order of this Court and that, before such an action is contemplated, it should be heard. This Court agrees. Accordingly, the Court finds that SERB's exclusive jurisdiction for handling claims of unfair labor practices does not preclude the FOP's intervention in this case.

7

Plaintiffs also cite Judge Marbley's discussion of § 4177.10(A) of the Ohio Revised code to support their position that the FOP does not have a cognizable interest at stake in this action. *See Strickrath*, 251 F.R.D. at 302. Plaintiffs are correct that § 4117.10(A) provides that, in the event of conflict between a CBA provision and civil rights legislation, the civil rights legislation would control, a proposition that could not be seriously questioned as to federal civil rights laws even absent that provision. Plaintiffs' assertion that this section prevents intervention presupposes, to a certain extent, Plaintiffs' success on the merits of this action. For instance, in the event of a judgment by the Court that certain practices governed by the CBA or within its scope violated § 1983, § 4117.10(A) would operate to prevent the FOP from asserting that those practices are contractually protected. This possible outcome, i.e. success on the merits by Plaintiffs, serves to illustrate how the FOP's legal interests could be impacted by this action. The FOP's presumed purpose in intervening is to join Defendants in defending this action on the merits. If successful, the FOP could prevent interference with the terms of the CBA and the collective bargaining rights of the FOP and its members. Thus, the § 4117.10(A) conflict provision cannot be interpreted to bar the FOP's intervention in this case.

### C. Impairment of the Legal Interest

The third element that must be established by the FOP is that its ability to protect its interest may be impaired in the absence of intervention. *Coal. to Defend Affirmative Action*, 501 F.3d at 779. Here, a ruling by the Court adverse to Defendants could potentially impact provisions of the CBA. For instance, a preliminary or permanent injunction curtailing the use of tasers and establishing monitoring requirements could impact the "past practices" section of the agreement, the procedures under which deputies represented by the FOP are disciplined, and provisions of the agreement covering the safety and working conditions of the employees.

8

Accordingly, the FOP has established that its legal interests could be impaired absent its intervention.

### D. Representation of the Legal Interest

The final element required to establish an intervention as of right is that "the parties already before the court cannot adequately protect the proposed intervenor's interest." *Coal. to Defend Affirmative Action*, 501 F.3d at 779. "[T]he proposed intervenor['s] burden in showing inadequacy is minimal." *Grutter v. Bollinger*, 188 F.3d 394, 400 (6th Cir. 1999) (internal quotation omitted). In this regard, the proposed intervenor must only demonstrate that the representation of its interests by the existing parties *may* be inadequate. *Linton*, 973 F.2d at 1319 (emphasis supplied). Here, the Court finds that the FOP has established that the existing Defendants cannot adequately protect its interests. In many respects, those interests may align with those of Franklin County and Sheriff Karnes. However, the FOP's position as the bargaining representative of the Sheriff's employees could easily lead to a divergence of those interests during the course of this litigation.

Accordingly, the FOP has met its burden in demonstrating each of the requisite elements of an intervention as a matter of right pursuant to Rule 24(a).

### III.

For the forgoing reasons, the Fraternal Order of Police, Capital City Lodge No. 9's Motion to Intervene (Doc. 59) is **GRANTED**.

9

**IT IS SO ORDERED.**

1-25-2011
_____        _____
DATED                             EDMUND A. SARGUS, JR.
                                  UNITED STATES DISTRICT JUDGE